Argued July 11, affirmed September 27, 1977

In the Matter of the Registration of a Foreign
Judgment Rendered in the Case of:
PETERSON et al, *Respondents,*

*v.*

ELY et ux, *Appellants.*

(TC 75-208 E., SC 24809)

569 P2d 1059

H. F. Smith, Klamath Falls, argued the cause and filed the briefs for appellants.

Fred J. Amundson, of Moore & Amundson, P.C., Medford, argued the cause and filed the brief for respondents.

TONGUE, J.

## TONGUE, J.

This is an appeal from an order of the Klamath County Circuit Court registering a default judgment by the Superior Court for Spokane County, Washington in the sum of $9,244.45. The defendants, Oregon residents, contend that the Washington court lacked jurisdiction over them and that, as a result, the Washington judgment is not entitled to full faith and credit.

The plaintiffs assert that the facts of the case, as stipulated, show sufficient "contacts" between the defendants and the state of Washington to give the Washington court jurisdiction under that state's "long-arm statute," RCW 4.28.185. In particular, plaintiffs contend that their cause of action arose from the transaction of business in Washington; from the commission of a tortious act in Washington; and from the ownership, use or possession of real property in Washington, and that the Washington court had jurisdiction on any one of these grounds.

### The facts

In 1963 Mr. and Mrs. H. Henry Higgins and Mr. and Mrs. Thomas Price sold by a real estate contract certain real property in Spokane, Washington, including a business known as "Mother's Kitchen," to Mr. and Mrs. Joseph Michielli, Mr. and Mrs. Patrick Michielli and to defendants Ely. All parties, including the Elys, were Washington residents. The contract was placed in escrow with a Washington bank.

In 1964 the Michiellis negotiated a sale of the vendee's interest in the real estate contract to plaintiffs Peterson and McGinnis. Prior to that sale the Michiellis had assigned their interest in the contract to the Elys. The Michiellis, the Petersons and the McGinnises executed a second real estate contract. The Elys executed a quitclaim deed to the property in favor of the Petersons and McGinnises.

That contract and quitclaim deed were also placed

[ 583 ]

in escrow with the same bank. The terms of that escrow provided for the distribution by the bank of monthly installment payments of $350 as follows: (1) $100 to the original escrow; (2) $189.08 to Guthrie Investments, Inc. "until each of these interests had been paid in full," and (3) the balance to the Elys. In September 1964 the Elys moved from Washington to Oregon.

In 1974 plaintiffs Peterson and McGinnis filed suit in Spokane County, Washington against the bank and the Elys alleging that the bank had made an overpayment of $7,500 to the Elys. The complaint alleged conversion and unjust enrichment by the Elys.

The Elys were personally served in Oregon, but made no appearance. A default judgment was entered against them in the amount of $7,500 plus interest and attorney's fees.[1] Plaintiffs then petitioned the Klamath County Circuit Court for registration of that foreign judgment against the Elys, who contested that petition and now appeal from the order allowing that petition.

## *The Washington "long-arm" statute.*

The questions to be decided are whether the conduct of defendants Ely was such as to subject them to the jurisdiction of the Washington court under the provisions of the Washington "long-arm" statute, RCW 4.28.185,[2] and, if so, whether the assumption of such

---

[1] By stipulation, an order was entered dismissing plaintiffs' complaint against the bank.

[2] "(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) *The transaction of any business within this state;*

"(b) *The commission of a tortious act within this state;*

"(c) *The ownership, use, or possession of any property whether real or personal situated in this state;*

jurisdiction by that court satisfied "traditional notions of fair play and substantial justice," within the contemplation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, so as to require the Oregon courts to give full faith and credit to the judgment of the Washington court.

In deciding these questions we must construe the Washington statute in accordance with decisions by the Washington Supreme Court. It follows that our decision in this case does not necessarily represent our view of how the Oregon "long-arm statute," ORS 14.035, should be interpreted and applied, despite the similar provisions of the two statutes.

The Washington Supreme Court first construed the statute in *Tyee Const. Co. v. Dulien Steel Products, Inc.,* 62 Wn2d 106, 381 P2d 245 (1963), and stated (at 251) the following criteria for application of "long-arm" jurisdiction:

> "(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." (footnotes omitted).

The *Tyee* criteria were later explained by the Washington court in *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn2d 823, 435 P2d 626, 634-35 (1967).

---

"(d) Contracting to insure any person, property or risk located within this state at the time of contracting.
"* * *

"(3) *Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section. * * *.*" (emphasis added).

"Criterion (1) is a capsulized statement of the statutory requirements set out in RCW 4.28.185(1)(a) and (b). Criterion (2) expresses the limitation set out in RCW 4.28.185(1) and (3). Criterion (3) is not based on anything in the statute, but is an attempt to make less vague the factual considerations which may have weight with the court in determining whether the nonresident's constitutional right to due process of law has been ignored. * * *.

"Justice Traynor of the Supreme Court of California, in Fisher Governor Co. v. Superior Court of City and Cy. of San Francisco, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1 (1959), set out the considerations proper under our criteria (3) even more specifically. * * *.

'The interest of the state in providing a forum for its residents * * * or in regulating the business involved * * *; the relative availability of evidence and the burden of defense and prosecution in one place rather than another * * *; the ease of access to an alternative forum * * *; the avoidance of multiplicity of suits and conflicting adjudications * * *; and the extent to which the cause of action arose out of defendant's local activities. * * *'." (citations omitted).

■ We agree that the *Tyee* criteria, when properly applied, satisfy the requirements of due process as stated by the United States Supreme Court.[3]

## Defendants' conduct was such as to confer jurisdiction under the Washington "long-arm" statute.

■■ We believe that the Washington courts would hold that the facts of this case, as previously stated, are sufficient to constitute either the "transaction of * * * business" within the state of Washington or the "ownership, use or possession of * * * property" situated in that state, within the meaning of the Washington "long-arm" statute. We also believe that the Washington courts would hold that these facts are

---

[3] *See International Shoe Co. v. Washington,* 326 U.S. 310 (1945); *Travelers Health Ass'n v. Virginia,* 339 U.S. 643 (1950); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952); *McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957); *Hanson v. Denckla,* 357 U.S. 235 (1958). *See also State ex rel Western Seed v. Campbell,* 250 Or 262, 271-75, 442 P2d 215 (1968).

sufficient to satisfy the first two *Tyee* criteria, namely: (1) that defendants "purposely [did] some act or consummate[d] some transaction" in Washington and, (2) that this cause of action did "arise from" and was "connected with, such act or transaction."

Although we find no decisions by the Washington courts involving similar facts, see *Bowen v. Bateman,* 76 Wn2d 567, 458 P2d 269, 273 (1969) and *Harrison v. Puga,* 4 Wn App 52, 480 P2d 247, 256 (1971).

■ After reviewing the facts of this case we also hold that defendants had sufficient "contacts" with the state of Washington so as to satisfy "traditional notions of fair play and substantial justice," both under the third *Tyee* "criterion," as subsequently explained in *Callahan v. Keystone Fireworks Mfg. Co., supra,* and also generally for the purposes of the requirements of the due process clause of the Fourteenth Amendment to the Constitution of the United States.[4]

Thus, it appears from the record in this case that the trial court could properly find that: (1) The defendants had substantial "contacts" with the state of Washington as former residents and as parties to a real estate transaction in that state. (2) They "knowingly and specifically dealt with Washington residents."[5] (3) When defendants retained the alleged overpayment from the escrow they performed a "purposeful" act looking toward "the projections of the consequences * * * into Washington."[6] (4) Defendants would have been protected by the Washington courts in any action they may have brought in Washington.[7] For example, if defendants had not received from the

---

[4] *See* cases cited in note 3, *supra. See also* Orland and Fischnaller, Jurisdictional Salad: Washington Style, 9 Gonzaga L. Rev. 1 (1973).

[5] *Bowen v. Bateman,* 76 Wn2d 567, 458 P2d 269, 274 (1969).

[6] *Oliver v. American Motors Corp.,* 70 Wn2d 875, 425 P2d 647, 655 (1967).

[7] *International Shoe Co. v. Washington,* 326 US 310, 320 (1945); *Bowen v. Bateman,* 76 Wn2d 567, 458 P2d 269, 274 (1969).

escrow the payments to which they were entitled they could have sought redress in the Washington courts. (5) In at least an indirect fashion, plaintiffs' cause of action arose out of defendants' "local activities" in Washington.[8] (6) Requiring the plaintiffs and their witnesses to travel to Oregon to prosecute the lawsuit would involve a disproportionate expense.[9] (7) Most of the witnesses and evidence are located in Washington.[10] (8) Finally, the state of Washington has a strong interest in providing a forum for its citizens to protect the integrity of real estate transactions consummated in that state.[11]

We conclude that under the facts as stated above, including the substantial "contacts" defendants had with the state of Washington, the assumption of jurisdiction by the Washington court did not offend "traditional notions of fair play and substantial justice."

■ For all of these reasons, the order of the trial court registering the Washington judgment is affirmed.

---

[8] *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn2d 823, 435 P2d 626, 635 (1967).

[9] *Bowen v. Bateman,* 76 Wn2d 567, 458 P2d 269, 274 (1969).

[10] *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn2d 823, 435 P2d 626, 635 (1967).

[11] *See Bowen v. Bateman,* 76 Wn24 567, 458 P2d 269, 274 (1969).