VAUGHN, Justice,
for the Majority:
Defendant Below/Appellant, The First Health Settlement Class (“The First Health Class”), appeals from an order of the Superior Court granting partial summary judgment in favor of Plaintiff Below/Appellee, Chartis Specialty Insurance Company (“Chartis”). The case arises from a class action filed against First Health Group Corporation (“First Health”) and others in the State of Louisiana. In that action, medical service providers alleged that First Health violated notice provisions contained in a Louisiana statute known as the Preferred Provider Organizations Act.[1] The plaintiff class obtained a judgment against First Health. First *995 Health then negotiated and paid a settlement of the judgment.
First Health was insured under an errors and omissions insurance policy issued by Chartis. The policy had a number of exclusions, one of which was an exclusion for “penalties.” The issue in this case is whether the amount First Health paid to settle the Louisiana litigation was a “penalty,” and, therefore, not a covered loss under the insurance policy. The Superior Court concluded that the amount paid was a “penalty.” We have concluded that it was not, and that the policy’s exclusion for “penalties” does not apply.
I. FACTUAL AND PROCEDURAL HISTORY
First Health is a provider of medical service plans, including Preferred Provider Organization (“PPO”) networks. Under the PPO network, First Health had agreements with medical providers in Louisiana in which the medical providers agreed to discount rates regarding certain medical services. First Health also entered into agreements with group workers’ compensation payers, such as employers, who utilized First Health’s discounted PPO rates when paying for workers’ compensation services.
By statute, the State of Louisiana has approved PPO networks and their discounted rates, but has imposed certain statutory requirements. One requirement is that the PPO give notice to a medical provider when a discount is to be applied. The notice provisions of the Louisiana statute can be satisfied in either one of two ways. One way is by issuing a benefit card to a patient that the patient can then present to the medical provider. The other way is by issuing a written notice to the medical provider that a certain group purchaser is a PPO participant.
Failure to comply with the notice requirements subjects a PPO to financial consequences under La. R.S. § 40:2203.1(G), which reads as follows:
Failure to comply with the [notice provisions] of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court.[2]
In April 2004, a group of Louisiana health care providers brought a class action against First Health and others in Louisiana state court alleging that First Health had failed to comply with the statutory notice provisions. The action was captioned Gunderson v. F.A. Richard & Associates, Inc.[3] (the “Gunderson Litigation”). The plaintiff class sought damages from First Health under La. R.S. § 40:2203.1(G). As mentioned, the plaintiffs were successful in obtaining a judgment against First Health.
First Health settled the judgment for the amount of $150,500,000, which included attorneys’ fees paid to plaintiff class counsel. As part of the settlement, First Health assigned to the plaintiff class its rights under the insurance policy issued by Chartis. The class is now known as The First Health Settlement Class, the Appellant in the instant case.
On September 9, 2009, Executive Risk Specialty Insurance Company (“Executive Risk”), First Health’s primary insurer, filed an action against First Health in the Delaware Superior Court seeking, among *996 other things, declaratory relief that any amount paid by First Health to the plaintiff class in the Gunderson Litigation was a penalty under La. R.S. § 40:2203.1(G) and not a covered loss under an insurance policy it had issued to First Health. The Executive Risk policy provided that penalties were excluded from coverage. Executive Risk named as defendants First Health’s excess insurers, including Chartis. The First Health Class was subsequently added as a defendant.[4]
The policy that Chartis issued to First Health also excludes penalties. It provides, in pertinent part, as follows:
“Loss” means Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a Claim. Loss shall include, up to. the amount listed in ITEM 3(b) of the Declarations (which sum shall be part of and not in addition to the Limit of Liability stated in ITEM 3(a) of the Declarations), any fines assessed, penalties imposed, or punitive, exemplary or multiplied damages awarded in Claims for Antitrust Activity, but only if such fines, penalties or punitive, exemplary or multiplied damages are insurable under applicable law. This paragraph shall be construed under the applicable law most favorable to the insurability of such fines, penalties, and punitive, exemplary or multiplied damages. Loss shall not include:
(1) Except as expressly set forth above, fines, penalties, taxes or multiplied damages. .. .[5]
While the policy initially excluded punitive or exemplary damages from the definition of Loss, an endorsement amended the Loss definition to specifically include coverage for punitive and exemplary damages.
The First Health Class and Chartis filed cross motions for partial summary judgment. On May 7, 2013, the Superior Court issued its opinion finding that the settlement paid by First Health in the Gunderson Litigation was a penalty. It therefore denied The First Health Class’ motion and granted Chartis’ motion.
When the Superior Court issued its May 7, 2013, opinion, other litigation was occurring in the State of Louisiana in the case of George Raymond Williams M.D. et al., v. SIF Consultants of Louisiana, Inc., et al. (the “Williams Litigation”). The Williams Litigation, like the class action brought in the Gunderson Litigation, was a class action in which medical providers alleged that a PPO network failed to comply with the notice provisions of Louisiana’s Preferred Provider Organizations Act. The plaintiff class sought damages under La. R.S. § 40:2203.1(G).
Executive Risk, the same insurer that filed this declaratory judgment action, was an insurer of a defendant in that case, CorVel Corporation (“CorVel”). Executive Risk was made a party to the Williams Litigation under La. R.S. § 22:1269, which provides that under certain conditions an “injured person ... shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone.”[6] The Executive Risk policy involved in the Williams Litigation also excluded penalties from covered losses.
On July 23, 2011, CorVel agreed to settle the Williams Litigation. Thereafter, the plaintiff class in Williams filed a mo *997 tion for partial judgment against Executive Risk contending that damages under La. R.S. § 40:2203.1(G) were statutory damages and not penalties. Executive Risk contended, as Chartis does here, that the damages under La. R.S. § 40:2203.1(G) were penalties. Because the insurance policy excluded penalties from the definition of Loss, Executive Risk argued that the settlement amount paid by CorVel was not a covered loss.
On July 29, 2013, the Louisiana trial court issued an opinion in the Williams Litigation granting the plaintiff class’ motion for partial summary judgment and holding that damages under La. R.S. § 40:2203.1(G) are statutory damages, not penalties.[7] Thus, according to the Louisiana trial court, the insurance policy issued to CorVel covered the amount paid to the plaintiff class in the Williams Litigation.
Executive Risk appealed the trial court’s decision to the State of Louisiana Court of Appeals for the Third Circuit. The appellate court affirmed the trial court’s judgment. It also found that damages under La. R.S. § 40:2203.1(G) are statutory damages, or damages punitive in nature, but not penalties.[8] Based on these findings, the appellate court concluded that the settlement paid by CorVel was a covered loss under the policy issued by Executive Risk. Executive Risk subsequently settled, and no appeal was taken to the Louisiana Supreme Court from the decision of the appellate court.
On August 23, 2013, the Superior Court entered a final order and judgment. On September 3, 2013, The First Health Class filed a Motion to Alter or Amend the Judgment under Superior Court Rule 59(d), or alternatively, for Relief from the Judgment under Rule 60(b). On September 20, 2013, while the motion was still pending before the Superior Court, The First Health Class filed a notice of appeal in this Court from the May 7, 2013, opinion and August 23, 2013, final order of the Superi- or Court.
The Superior Court denied The First Health Class’ motions on September 25, 2013. The First Health Class filed an amended notice of appeal on October 3, 2013. On December 10, 2013, Chartis filed a Motion to Dismiss the appeal on the ground that The First Health Class failed to file a timely notice of appeal. On January 6, 2014, this Court denied the motion without prejudice.
II. DISCUSSION
Chartis has renewed its Motion to Dismiss. It relies upon an order issued by this Court in McElroy v. Shell Petroleum, Inc.[9] In McElroy, the Court of Chancery entered an order on June 18, 1992, and McElroy filed a timely motion for reargument. On July 15, 1992, while the motion for reargument was still pending in the Court of Chancery, McElroy filed a notice of appeal in this Court. On July 23, 1992, this Court directed McElroy to file an amended notice of appeal to comply with Rule 7 and Official Form A. On July 29, 1992, McElroy filed a first amended notice of appeal. At that time, the motion for reargument was still pending in the Court of Chancery. On August 19, 1992, after the Court of Chancery denied the motion for reargument and its June 18, 1992, order had become final, McElroy filed a second amended notice of appeal. This Court concluded in McElroy that the first notice *998 of appeal was filed prematurely because the motion for reargument was still pending in the Court of Chancery, that both the first amended notice of appeal and the second amended notice of appeal related back to the original, prematurely filed notice of appeal, and that no effective notice of appeal had been filed. Accordingly, we dismissed the appeal.[10]
We are not persuaded that McElroy should be followed here. In Tomasetti v. Wilmington Sav. Fund Soc’y, this Court held that a timely filed Motion for New Trial or a Motion for Reargument in a civil case suspends the finality of the trial court judgment and tolls the time for filing an appeal.[11] Under Tomasetti, a notice of appeal filed in this Court before such post-trial motions are decided in the trial court fails to confer jurisdiction upon this Court and is a nullity. A notice of appeal filed in a timely manner after post-trial motions have been decided in the trial court is the filing that confers jurisdiction in this Court, and it cannot relate back to an ineffective notice of appeal that failed to confer jurisdiction upon the Court. The same rule applies to a Motion to Alter or Amend the Judgment filed under Superior Court Civil Rule 59(d). We find that the notice of appeal filed on October 3, 2013, after the Superior Court denied The First Health Class’ Motion to Alter or Amend the Judgment, was timely and effective. Accordingly, we will consider the merits of the Appellant’s claim here.
We review a grant of summary judgment de novo.[12] Interpretation of a statute is a question of law, which we also review de novo.[13]
“Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference.”[14] We have acknowledged that “important and novel issues of other sovereigns are best determined by their courts where practicable.”[15] Where a foreign statute has been interpreted by courts of the state of its origin, such interpretation should be followed in other states where the statute is applied.[16] Pursuant to the doctrine of comity, the courts of a sister state should adopt the decision of the high *999 est tribunal of the enacting state concerning construction of the statute.[17]
The First Health Class argues that, in accordance with the doctrine of comity, we should show deference to the Court of Appeals of Louisiana, and adopt its interpretation of La. R.S. § 40:2203.1(G). We agree. The Louisiana appellate court considered the same Louisiana statute and analyzed almost identical insurance policy language as that involved in this case. Because the Louisiana appellate court in the Williams Litigation is the highest Louisiana appellate court to construe La. R.S. § 40:220S.1(G), we adopt its reasonable interpretation as our own. We find that La. R.S. § 40:2203.1(G) provides for statutory damages, not penalties. Thus, we find that the amount that First Health paid to settle the Gunderson Litigation, including attorneys’ fees, is not excluded from the definition of “Loss” by the provision that excludes “penalties.”
In our view, the Dissent is based upon several flawed premises. The Dissent maintains that the Superior Court rendered its decision well before the Louisiana trial court issued its ruling. In other words, it takes to task the District Court of Louisiana for the 27th Judicial District for not deferring to the Delaware Superior Court. The fact is that the litigation in Louisiana had been in progress for many years prior to the filing of the Delaware suit.[18] The center of this litigation has been in Louisiana and the dispute underlying the Delaware declaratory action arises out of the Louisiana Litigation.
As early as 2007, the Louisiana trial court in the Gunderson Litigation issued a ruling from the bench that had negative implications for insurance carriers. The trial court stated the following:
This Court notes from a very basic standpoint that [the Louisiana statute § 40:2203.1(G) ] makes no mention of fines or penalties ... I believe from a very basic standpoint that damages are covered by the Columbia policy. No one is arguing that point.
Now, as to. whether or not the quote, “damages” being sought by the plaintiffs are in fact civil fines and penalties this Court is of the position that they are not.[19]
Moreover, there is very little connection to the State of Delaware in this litigation. The only nexus with the State of Delaware is First Health’s situs of incorporation. The First Health Class is a group of Louisiana medical providers. First Health’s principal place of business is Illinois. Chartis is an Illinois corporation, with its principal place of business in New York. Executive Risk is a Connecticut corporation, with its principal place of business in New Jersey.
The connection this litigation has with the State of Louisiana is much stronger. *1000 This litigation first began in 2004 in the Gunderson Litigation. Another class action began about a decade ago when Lake Charles Memorial Hospital filed suit against CorVel in Louisiana.[20] The cases alleged a violation of Louisiana law, which by its own terms has no application outside that state’s boundaries.[21] Moreover, the parties agree that there is no difference between Delaware and Louisiana regarding construing contracts. For example, they agree that all potentially applicable state laws provide that coverage provisions should be construed broadly and exclusions should be construed narrowly.
The Dissent maintains that Delaware law applies notwithstanding the absence of a choice of law provision in the insurance policy. While the parties may have agreed for purposes of this appeal that Delaware law applies to the construction of the policy, they disagree on which state’s law controls the central question of how to characterize the judgment obtained in the Gunderson Litigation.
The Appellants contend that the Louisiana statute controls how the judgment is characterized. The Delaware Superior Court agreed as evidenced by its statement that “while the Court will apply Delaware law to interpret the insurance contracts, Louisiana law will be applied regarding the penalty issue, as this Court must examine a Louisiana Statute.”[22] However, the Superior Court erred when it then applied common law principles in answering this question, rather than Louisiana’s civil law approach that was foreshadowed by the Gunderson trial court’s bench ruling. Under civil law, priority is given to statutes and codes over common law jurisprudence.[23] “Civil law codes provide the core of the law-general principles!], which] are systematically and exhaustively exposed in codes[,] and particular statutes complete them.”[24] Quite simply, in Louisiana, if the statute does not characterize the damage award entered as a “penalty,” then it is not a “penalty” under Louisiana law.[25]
The Dissent refuses to accept the Louisiana court’s construction of its own statute. It rejects Louisiana’s civil law approach as tautological, and instead, applies common law interpretation to the Louisiana statute to determine whether damages under La. R.S. § 40:2203.1(G) constitute “penalties.” We submit that we should defer to the Louisiana court’s civil law approach in the construction of its own statute.
*1001 Finally, we acknowledge that the Superior Court did not have the benefit of the Louisiana trial and appellate court’s decisions in the Williams Litigation when it rendered its May 7, 2013, opinion and order. But given our de novo review, we will exercise comity in favor of our sister state, Louisiana, and, accordingly, hold that Louisiana’s interpretation of its own statute is the correct interpretation.
III. CONCLUSION
Accordingly, the matter is REVERSED and REMANDED for further proceedings consistent with this Opinion.

. The act is also known as the "Any Willing Provider Act.”

. La. R.S. § 40:2203.1(G).

. No. 2004-2417 (14th Jud. Dist. Ct. Parish of Calcasieu).

.Executive Risk and the other insurers, except Chartis, have entered into settlement agreements with The First Health Class.

. Appellant's Op. Br.App. at A0366.

. La. R.S. § 22:1269.

. Williams v. SIF Consultants of Louisiana, Inc., 2013 WL 7330225 (La.Dist.Ct. Jul. 29, 2013).

. Williams v. SIF Consultants of Louisiana, Inc., 133 So.3d 707 (La.Ct.App.2014), reh’g denied (Apr. 9, 2014).

.1992 WL 279112 (Del. Sep. 2, 1992).

. On the same day that McEIroy filed his second amended notice of appeal, he filed a new notice of appeal, which was given a new appeal number. He was able to proceed with his appeal under the new number.

. 672 A.2d 61 (Del.1996).

. Kelty v. State Farm Mut. Auto. Ins. Co., 73 A.3d 926, 929 (Del.2013) (citing E. Sav. Bank, FSB v. CACH, LLC, 55 A.3d 344, 347 (Del.2012)).

. Id.

. Columbia Cas. Co. v. Playtex FP, Inc., 584 A.2d 1214 (Del.1991) (citing 16 Am.Jur.2d, Conflict of Laws § 10, at 28 (1979)).

. Martinez v. E.I. DuPont de Nemours and Co., Inc., 86 A.3d 1102, 1110 (Del.2014).

. 2 Sutherland Statutory Construction § 37:3 (7th ed.) (internal citations omitted). See, e.g., Kahn v. Pony Express Courier Corp., 173 Or.App. 127, 20 P.3d 837, 849 (2001) (examining decisions of the Montana appellate courts interpreting and applying a Montana statute to determine its intent); Peterson v. Ely, 279 Or. 581, 569 P.2d 1059 (1977) (construing Washington statute in accordance with decisions of Washington Supreme Court); People ex rel. Shults v. Lombard, 91 Misc.2d 881, 398 N.Y.S.2d 932 (Co.Ct.1977) ("The decision of the foreign court of last resort is controlling on the question to be decided by a court of this State, and this is especially true when a question arises with respect to the statute and constitution of the foreign state.”) (internal citations omitted); King v. Klemp, 57 A.2d 530, 533 (N.J.Ch.1947) ("[W]here the construction of a foreign statute is involved, our courts will accept as controlling the interpretation placed thereon by the courts of that state.”).

. See 2 Sutherland Statutory Construction § 37:3 (7th ed.) (internal citations omitted).

. As mentioned, the Gunderson Litigation was brought against First Health in 2004. In addition, in 2004 and 2005, CorVel and Lake Charles Memorial Hospital ("LCMH”) were embroiled in legal action in Louisiana. On December 22, 2006, LCMH instituted a putative class arbitration against CorVel (Sw. La. Hosp. Ass'n. dfb/a Lake Charles Mem'l Hosp. v. CorVel ). LCMH claimed that CorVel violated Louisiana law, and sought coverage from an insurance policy issued by Homeland Insurance Company of New York ("Homeland”), which also contained an exclusion for penalties. On September 30, 2009, the Williams Litigation was filed. The lawsuit claimed the same violation of Louisiana law as claimed by LCMH against CorVel (and against Homeland).

. Gunderson v. F.A. Richard & Associates, Inc., No. 2004-2417 (14th Jud. Dist. Ct., Parish of Calcasieu, La. Jul. 20, 2007), aff'd, 44 So.3d 779 (La.App.2010); Appellant’s Op. Br. App. at A987.

. See CorVel Corp. v. Sw. La. Hosp. Ass’n, 2007 WL 594904 (W.D.La. Feb. 21, 2007) (ordering the parties to enter arbitration for statutory claims under La. R.S. § 40:2203.1, and discussing the filing of Sw. La. Hosp. Ass'n. d/b/a Lake Charles Mem’l Hosp. v. CorVel).

. La. R.S. § 40:2203.1(A) (“Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.”).

. Homeland Ins. Co. v. CorVel Corp., 2013 WL 3937022, at *10 (Del.Super. Jun. 13, 2013).

. See generally William Tetley, Mixed Jurisdictions: Common Law v. Civil Law (Codified and Uncodified), 60 La. L.Rev. 677, 701-05 (2000).

. Id. at 703 (internal citations omitted).

. See Williams v. SIF Consultants of Louisiana, Inc., 133 So.3d 707, 714 (La.Ct.App.2014) ("The language of La. R.S. § 40:2203.1 denotes that a violator is subject to pay ‘damages’ and includes no language regarding penalties.”).