VAUGHN, Justice,
for the Majority:
Defendant Below/Appellant, CorVel Corporation (“CorVel”), appeals from an order of the Superior Court granting partial summary judgment in favor of Plaintiff Below/Appellee, Homeland Insurance Company of New York (“Homeland”). The case arises from class actions filed against CorVel and others in the State of Louisiana. In those actions, medical service providers alleged that CorVel violated notice provisions contained in a Louisiana statute known as the Preferred Provider Organizations Act.[1] CorVel eventually entered into a settlement in which it resolved all of the Louisiana litigation.
CorVel was insured under an errors and omissions insurance policy issued by Homeland. The policy had a number of exclusions, one of which was an exclusion for “penalties.” The issue in this case is whether the amount that CorVel paid to settle the Louisiana litigation was a “penalty,” and, therefore, not a covered loss under the insurance policy. The Superior Court concluded that the amount paid was a “penalty.” We have concluded that it was not a “penalty,” and that the policy’s exclusion for “penalties” does not apply.
I. FACTUAL AND PROCEDURAL HISTORY
CorVel, a Delaware corporation, owns and operates a Preferred Provider Organization (“PPO”) network throughout the United States. As part of its national network, CorVel had. PPO agreements with medical providers in Louisiana. Under the agreements, the medical providers agreed to discount rates on certain medical services. CorVel also entered into agreements with group workers’ compensation payers, such as employers, who utilized CorVel’s discounted PPO rates when paying for workers’ compensation services.
*865 By statute, the State of Louisiana has approved PPO networks and their discounted rates, but has imposed certain statutory requirements. One requirement is that the PPO give notice to a medical provider when a discount is to be applied. The notice provisions of the Louisiana statute can be satisfied in either one of two ways. One way is by issuing a benefit card to a patient that the patient can then present to the medical provider. The other way is by issuing a written notice to the medical provider that a certain group purchaser is a PPO participant.
Failure to comply with the notice requirements subjects a PPO to financial consequences under La. R.S. § 40:2203.1(G), which reads as follows:
Failure to comply with the [notice provisions] of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court.
Two class actions were brought against CorVel and others in Louisiana state court alleging that CorVel had failed to comply with the statutory notice provisions. The actions sought damages under La. R.S. § 40:2203.1(G). Both actions made the same allegations and sought the same relief. The first action was captioned SWLA Hospital Assoc. d/b/a Lake Charles Memorial Hospital v. CorVel (the “LCMH Arbitration”).[2] The second action, filed September 30, 2009, was captioned George Raymond Williams M.D. Orthopedic Surgery v. SIF Consultants of Louisiana, Inc. (the “Williams Litigation,” and together with the LCMH Arbitration, the “Louisiana Litigation”).[3] On March 24, 2011, Homeland and Executive Risk Specialty Insurance Co. (“Executive Risk”), another CorVel insurer, were also made parties to the Williams Litigation under La. R.S. § 22:1269, which provides that under certain conditions an “injured person ... shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone.”[4]
On July 23, 2011, CorVel agreed to settle the Louisiana Litigation and other claims pending before the Louisiana Office of Workers’ Compensation for $9 million, including an amount for attorneys’ fees payable to plaintiff class counsel. As part of the settlement, CorVel assigned to the plaintiff class its rights under the insurance policy issued by Homeland and Executive Risk.[5]
On January 10, 2011, Homeland filed an action against CorVel in the Delaware Superior Court seeking, among other things, declaratory relief that any amount paid by CorVel to the plaintiff class as a result of the Louisiana Litigation was a “penalty” under La. R.S. § 40:2203.1(G) and not a covered loss under the insurance policy.
*866 The Homeland policy provided, in pertinent part, as follows:
The Underwriters will pay on behalf of the Insured any Loss which the Insured is legally obligated to pay as a result of any Claim that is first made against the Insured ... and reported to the Underwriter either during the Policy Period or in any event within ninety (90) days after the end of the Policy Period, in accordance with CONDITION (B) of this Policy.
“Loss” means ... Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a claim.
Loss shall include:
(1) a claimant’s attorney’s fees and court costs, but only in an amount equal to the percentage that the amount of monetary damages covered under this Policy for any settlement or judgment bears to the total amount of such settlement or judgment ...
(8) punitive, exemplary or multiplied damages where insurable by law ... Loss shall not include:
(1) fines, penalties or taxes; provided that (A) punitive damages shall not be deemed to constitute fines, penalties or taxes for any purpose herein....
Executive Risk sought and received approval to intervene in the Superior Court action filed by Homeland.[6] The Executive Risk policy contained language similar to the Homeland policy, and, of importance to this case, also excluded penalties from coverage.
On June 13, 2018, the Superior Court issued an opinion and order granting summary judgment to Executive Risk and partial summary judgment to Homeland on the ground that the amount that CorVel paid to settle the Louisiana Litigation was a penalty.
When the Superior Court issued its June 13, 2013, opinion, a motion for partial summary judgment filed by the plaintiff class against- Executive Risk in the Williams Litigation was pending in Louisiana. In the motion, the plaintiff class contended that damages under La. R.S. § 40:2203.1(G)' were statutory damages and not penalties. Executive Risk contended, as Homeland does here, that the damages under the statute were penalties. Because the insurance policy excluded penalties from the definition of Loss, the insurance company argued that the amount paid by CorVel to the plaintiff class was not covered under the policy issued to CorVel.
On July 29, 2013, almost seven weeks after the Superior Court issued its opinion and order, the Louisiana trial court issued an opinion in the Williams Litigation granting the plaintiff class’ motion for partial summary judgment and holding that damages under La. R.S. § 40:2203.1(G) are statutory damages, not penalties.[7] Thus, according to the Louisiana trial court, the insurance policy issued to CorVel covered the amount paid to the plaintiff class in the Louisiana Litigation.
Executive Risk appealed the trial court’s decision to the State of Louisiana Court of Appeals for the Third Circuit. The appellate court affirmed the trial court’s judgment. It also found that damages under La. R.S. § 40:2203.1(G) are statutory damages, or damages punitive in nature, but not penalties.[8] Based on these findings, *867 the appellate court concluded that the settlement amount paid by CorVel was a covered loss under the policy issued by Executive Risk. Executive Risk subsequently settled in that case, and no appeal was taken to the Louisiana Supreme Court from the decision of the appellate court.
Meanwhile, in Delaware, the Superior Court sent a letter to counsel on July 26, 2013, three days before the Louisiana trial court’s decision in the Williams Litigation was issued, stating that “to the extent there are claims still pending in this litigation, a trial date will be assigned promptly.”[9] The Delaware Superior Court requested that each party identify the claims it intended to present at trial and state the number of trial days the party would need.
On August 15, 2013, after the Louisiana trial court’s decision in the Williams Litigation was issued, counsel for Homeland and Executive Risk wrote to the Delaware Superior Court that no issues remained and that the docket should be marked closed. On August‘22, 2013, counsel for CorVel responded, with a letter stating that a trial'was still necessary on its affirmative defenses — i.e., that Homeland’s denial of coverage was barred by waiver and estoppel. But after further correspondence between the court and counsel, the Superior Court entered an order on August 27, 2013, closing the case on the docket. In that order, the Superior Court referred to its June 13, 2013, order as its final order and judgment.
On September 3, 2013, CorVel filed a Motion to Alter or Amend the August 27, 2013, order under Superior Court 59(d), or, alternatively, a Motion for Relief from Judgment under Rule 60(b). The Superior Court denied both motions in a September 20, 2013, order. In that order, however, the Superior Court referred to its August 27, 2013, order as its final order.
On September 26, 2013, CorVel filed its appeal to this Court. Homeland filed a Motion to Dismiss the Appeal on the grouhds that the Superior Court’s final order was its June 13, 2013, opinion and order, and that the appeal was therefore untimely. This Court denied Homeland’s motion without prejudice.
II. DISCUSSION
Homeland has renewed its Motion to Dismiss the Appeal. Homeland argues that the June 13, 2013, opinion' and order granted the entirety of the relief it sought, resolved all claims as to all parties, mooted the remaining arguments, and expressed the Superior Court’s decision to resolve all of the claims presented. Homeland contends that the trial court’s June 13, 2013, opinion and order clearly and unambiguously granted Homeland’s motion for summary judgment, holding that there was no coverage for the amount CorVel paid to thé plaintiff class to settle the Louisiana Litigation under the insurance policy.
The question of whether an order constitutes a final judgment depends on “whether the judge has or has not clearly declared his intention in this respect in his opinion.”[10] CorVel had pled affirmative defenses. In June 2012, the Superior Court entered an order that apparently was intended to stay discovery “on issues not resolved through the Court’s adjudication of any dispositive mo *868 tions.” The June 18, 2018, opinion and order did not expressly address affirmative defenses, and it appears that CorVel, at least initially, contemplated proceeding on those defenses after the motion for partial summary judgment was granted. On this record, we find that the August 27, 2013, order was the Superior Court’s final order and that CorVel’s appeal was timely filed.
We review a grant of summary judgment de novo.[11] Interpretation of a statute is a question of law, which we also review de novo.[12]
“Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference.”[13] We have acknowledged that “important and novel issues of other sovereigns are best determined by their courts where practicable.”[14] Where a foreign statute has been interpreted by courts of the state of its origin, such interpretation should be followed in other states where the statute is applied.[15] Pursuant to the doctrine of comity, the courts of a sister state should adopt the decision of the highest tribunal of the enacting state concerning construction of the statute.[16]
CorVel argues that, in accordance with the doctrine of comity, we should show deference to the Louisiana appellate court, and adopt its interpretation of La. R.S. § 40.2203.1(G). We agree. The Louisiana appellate court considered the same Louisiana statute and analyzed almost identical insurance policy language as that involved in this case. Because the Louisiana appellate court in the Williams Litigation is the highest Louisiana appellate court to construe La. R.S. § 40.2203.1(G), we adopt its reasonable interpretation as our own. We find that La. R.S. § 40.2203.1(G) provides for statutory damages, not penalties. Thus, we find that the amount CorVel paid to settle the Louisiana Litigation, including attorneys’ fees, is not excluded from the definition of “Loss” by the insurance policy provision that excludes “penalties.”
In our view, the Dissent is based upon several flawed premises. The Dissent maintains that the Superior Court rendered its decision well before the Louisiana trial court issued its ruling. In other words, it takes to task the District Court *869 of Louisiana for the 27th Judicial District for not deferring to the Delaware Superior Court. The fact is that the Louisiana Litigation had been in progress for many years prior to the filing of the Delaware suit.[17] The center of this litigation has been in Louisiana and the dispute underlying the Delaware declaratory action arises out of the Louisiana Litigation.
The Delaware suit was filed on January 10, 2011,[18] after the Louisiana Court of Appeals for the Third Circuit affirmed a ruling in another case that had negative implications for the insurance carriers.[19] Specifically, on June 80, 2010, the Louisiana Court of Appeals for the Third Circuit affirmed a ruling by the trial court, in which the trial court stated the following:
This Court notes from a very basic standpoint that [the Louisiana statute § 40:2203.1(G) ] makes no mentions of fines or penalties ... I believe from a very basic standpoint that damages are covered by the Columbia policy. No one is arguing that point.
Now, as to whether or not the quote, “damages” being sought by the plaintiffs are in fact civil fines and penalties this Court is of the position that they are not.[20]
Thus, the more compelling conclusion is that the Appellees filed in Delaware when they saw the handwriting on the wall in Louisiana.
Moreover, there is very little connection to the State of Delaware in this litigation. The only nexus with the State of Delaware is CorVel’s situs of incorporation. CorVel is a Delaware corporation, with its principal place of business in California. Homeland is a New York corporation, with its principal place of business in Massachusetts. Executive Risk is a Connecticut corporation, with its principal place of business in New Jersey.
The connection this litigation has with the State of Louisiana is much stronger. Although CorVel is incorporated in Delaware and maintains its headquarters in California, the company owns and operates PPO networks throughout the United States. One of the entities with which CorVel had a PPO agreement was Lake Charles Memorial Hospital in Louisiana. This litigation first began about a decade ago when LCMH brought suit against CorVel in Louisiana,[21] alleging a violation of Louisiana law, which by its own terms has no application outside that state’s boundaries.[22] Moreover, the parties agree *870 that there is no difference between Delaware and Louisiana regarding construing contracts. For example, they agree that all potentially applicable state laws provide that coverage provisions should be construed broadly and exclusions should be construed narrowly.
The Dissent maintains that Delaware law applies notwithstanding the absence of a choice of law provision in the insurance policy. While the parties may have agreed for purposes of this appeal that Delaware law applies to the construction of the policy, they disagree on which state’s law controls the central question of how to characterize the judgment obtained in the Louisiana Litigation.
The Appellants contend that the Louisiana statute controls how the judgment is characterized. The Delaware Superior Court agreed as evidenced by its statement that “while the Court will apply Delaware law to interpret the insurance contracts, Louisiana law will be applied regarding the penalty issue, as this Court must examine a Louisiana Statute.”[23] However, the Superior Court erred when it then applied common law principles in answering this question, rather than Louisiana’s civil law approach that was foreshadowed in the Gunderson decision. Under civil law, priority is given to statutes and codes over common law jurisprudence.[24] “Civil law codes provide the core of the law-general principles[, which] are systematically and exhaustively exposed in codes[,] and particular statutes complete them.”[25] Quite simply, in Louisiana, if the statute does not characterize the damage award entered as a “penalty,” then it is not a “penalty” under Louisiana law.[26]
The Dissent refuses to accept the Louisiana court’s construction of its own statute. It rejects Louisiana’s civil law approach as tautological, and instead, applies common law interpretation to the Louisiana statute to determine whether damages under La. R.S. § 40:2203.1(G) constitute “penalties.” We submit that we should defer to the Louisiana court’s civil law approach in the construction of its own statute.
Finally, we acknowledge that the Superior Court did not have the benefit of the Louisiana trial and appellate court’s decisions in the Williams Litigation when it rendered its June 13, 2013, opinion and order. But given our de novo review, we will exercise comity in favor of our sister state, Louisiana, and, accordingly, hold that Louisiana’s interpretation of its own statute is the correct interpretation.
III. CONCLUSION
Accordingly, the matter is REVERSED and REMANDED for further proceedings consistent with this Opinion.

. The act is also known as the "Any Willing Provider Act.”

. See CorVel Corp. v. Sw. La. Hosp. Ass'n, 2007 WL 594904 (W.D.La. Feb. 21, 2007) (ordering the parties to enter arbitration for statutory claims under La. R.S. § 40:2203.1).

. Williams v. SIF Consultants of Louisiana, Inc., 2013 WL 7330225 (La.Dist.Ct. Jul. 29, 2013).

. La. R.S. § 22:1269.

.Appellant’s Op. Br.App. at A265-66 ("CorV-el shall assign to the Class any and all of the its rights to: (a) receive any and all proceeds available/awarded pursuant to CorVel’s insurance policies with respect to the released claims ... and (b) pursue declaratory judgment and/or damages action with respect to indemnity coverage under these policies for the released claims.”).

. Executive Risk has since settled with CorVel and been dismissed from the case.

. Williams v. SIF Consultants of Louisiana, Inc., 2013 WL 7330225 (La.Dist.Ct. Jul. 29, 2013).

.Williams v. SIF Consultants of Louisiana, Inc., 133 So.3d 707 (La.Ct.App.2014), reh’g denied (Apr. 9, 2014).

. The judge who issued the June 13, 2013, opinion and order retired shortly thereafter. The July 26, 2013, letter was written by his successor.

. J. I. Kislak Mortgage Corp. v. William Matthews, Builder, Inc., 303 A.2d 648, 650 (Del. 1973) (quoting United States v. F. & M. Schae-fer Brewing Co., 356 U.S. 221, 212, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958)).

. Kelty v. State Farm Mut. Auto. Ins. Co., 73 A.3d 926, 929 (Del.2013) (citing E. Sav. Bank, FSB v. CACH, LLC, 55 A.3d 344, 347 (Del. 2012)).

. Kelty, 73 A.3d at 929 (citing Sussex Cnty. Dep't of Elections v. Sussex Cnty. Republican Comm., 58 A.3d 418, 421 (Del.2013)).

. Columbia Cas. Co. v. Playtex FP, Inc., 584 A.2d 1214 (Del.1991) (quoting 16 Am.Jur.2d, Conflict of Laws § 10, at 28 (1979)).

. Martinez v. E.I. DuPont de Nemours and Co., Inc., 86 A.3d 1102, 1110 (Del.2014).

. 2 Sutherland Statutory Construction § 37:3 (7th ed.) (internal citations omitted). See, e.g., Kahn v. Pony Express Courier Corp., 173 Or.App. 127, 20 P.3d 837, 849 (2001) (examining decisions of the Montana appellate courts interpreting and applying a Montana statute to determine its intent); Peterson v. Ely, 279 Or. 581, 569 P.2d 1059 (1977) (construing Washington statute in accordance with decisions of Washington Supreme Court); People ex rel. Shults v. Lombard, 91 Misc.2d 881, 398 N.Y.S.2d 932 (Co.Ct.1977) ("The decision of the foreign court of last resort is controlling on the question to be decided by a court of this State, and this is especially true when a question arises with respect to the statute and constitution of the foreign state.”) (internal citations omitted); King v. Klemp, 26 N.J. Mise. 140, 57 A.2d 530, 533 (NJ.Ch.1947) (“[W]here the construction of a foreign statute is involved, our courts will accept as controlling the interpretation placed thereon by the courts of that state.”).

.See supra footnote 15.

. In 2004 and 2005, CorVel and LCMH were embroiled in legal action in Louisiana. On December 22, 2006, LCMH instituted a putative class arbitration against CorVel (Sw. La. Hosp. Ass'n. d/b/a Lake Charles Mem’l Hosp. v. CorVel). LCMH claimed that CorVel violated Louisiana law, and sought coverage from an insurance policy issued by Homeland. On September 30, 2009, the Williams Litigation was filed. The lawsuit claimed the same violation of Louisiana law as claimed by LCMH against CorVel (and against Homeland).

. Homeland Ins. Co., et al. v. CorVel Corp., 2013 WL 3937022 (Del.Super. Jun. 13, 2013).

. Gunderson v. F.A. Richard & Associates, Inc., No. 2004-2417 (14th Jud. Dist. Ct., Parish of Calcasieu, La. Jul. 20, 2007), aff d, 44 So.3d'779 (La.App.2010); Appellant's Op. Br. App. at A987.

. Appellant’s Op. Br.App. at A987.

. See CorVel Coip. v. Sw. La. Hosp. Ass’n, 2007 WL 594904 (W.D.La. Feb. 21, 2007) (ordering the parties to enter arbitration for statutory claims under La. R.S. § 40:2203.1, and discussing the filing of Sw. La. Hosp. Ass'n. d/b/a Lake Charles Mem'l Hosp. v. CorV-el).

. La. R.S. § 40:2203.1(A) ("Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined *870 in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.").

. Homeland Ins. Co. v. CorVel Corp., 2013 WL 3937022, at *10 (Del.Super. Jun. 13, 2013).

. See generally William Tetley, Mixed Jurisdictions: Common Law v. Civil Law (Codified and Uncodified), 60 La. L.Rev. 677, 701-05 (2000).

. Id. at 703 (internal citations omitted).

. See Williams v. SIF Consultants of Louisiana, Inc., 133 So.3d 707, 714 (La.Ct.App. 2014) (explaining how "[t]he language of La. R.S. § 40:2203.01 denotes that a violator is subject to pay 'damages' and includes no language regarding penalties").