**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| THE REPUBLICAN STATE COMMITTEE OF DELAWARE, JOHN FOLTZ, and PAULA MANOLAKOS, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) C.A. No. 2020-0685-SG ) |
| THE STATE OF DELAWARE, DEPARTMENT OF ELECTIONS and ANTHONY J. ALBENCE, State Election Commissioner, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

Date Submitted: September 24, 2020
Date Decided: September 28, 2020

Julia B. Klein, of KLEIN LLC, Wilmington, Delaware, *Attorneys for Plaintiffs The Republican State Committee of Delaware, John Foltz, and Paula Manolakos*.

Kathleen M. Jennings, Aaron R. Goldstein, Ilona M. Kirshon, Allison J. McCowan, and Frank N. Broujos, of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; Max B. Walton, Matthew F. Boyer, Trisha W. Hall, of CONNOLY GALLAGHER LLP, Wilmington, Delaware, *Attorneys for Defendants The State of Delaware, Department of Elections and Anthony J. Albence, State Election Commissioner*.

GLASSCOCK, Vice Chancellor

The world is suffering from a pandemic, and the United States is not immune. Every state, including Delaware, has seen normal routines disrupted. In businesses, in the courts, in social life in general, the rhythms and rituals that were simply accepted, pre-COVID, have required deliberate consideration, and often grave modification, in the attempt to preserve public health. There is no more important civic ritual than the biennial election of our state and national officials. The election is both the living embodiment of the people's ownership of their own government, and a celebration of the democracy thus created. The coming together of the electorate on election Tuesday to select public officials[1] is a tradition as old as the State. It is also, in light of an air-borne virus that has killed over 200,000 Americans, an arena of intense social contact that, in the view of our legislature, can form a vector for the infection of voters and poll workers, and a severe disincentive for many who would otherwise wish to express their civic will at the polling places. The General Assembly has addressed this problem with an emergency act, Delaware Code, Title 15, Chapter 56 (the "Vote by Mail Statute" or the "Act").[2] The Act expands the ability to vote by mail, for this election year only. The right to cast an absentee ballot is limited by our state constitution, the Delaware Constitution of 1897, however, and constitutional limits cabin legislative freedom. Thus, the matter

---

[1] Followed, in Sussex County, by the gathering to hear the election results on Returns Day Thursday, another civic ritual sacrificed, this year, to preserve public health.

[2] H.B. 346, 150th Gen. Assemb., Reg. Sess., 2020 Del. Laws 245 [hereinafter HB 346].

before me. The Plaintiffs are the Republican State Committee of Delaware and two individuals who are Delaware registered voters. They ask me to permanently enjoin the operation of the newly-enacted Vote by Mail Statute and to enjoin the Defendants, the Delaware State Election Commissioner and the Delaware Department of Elections (the "Department," and, collectively, the "DOE"), from sending out vote-by-mail ballots or counting any ballots returned pursuant to the Act.

The law in question provides that any citizen eligible to vote in the State may do so by mail-in ballot, rather than at a polling place. In furtherance of that procedure, and pursuant to the Act, applications to receive vote-by-mail ballots have been mailed to the State's registered voters. The rationale is that the novel coronavirus ("COVID-19"), which is transmitted largely by air, makes traditional voting—waiting in a line of voters, then interacting with polling staff indoors at close quarters—a health risk, according to legislative findings in connection with the Act. The General Assembly found that, in light of the threat to public health, legislative action was necessary to the continuity of government. The Vote by Mail Statute is explicitly limited to this year's state-office primaries and the election which will occur in a few weeks; by its terms, the Act only applies in the year 2020.

The DOE concedes that the Delaware Constitution lists reasons for which ballots may be provided for absentee voting, that this list of reasons is intended to

2

be comprehensive, and that the current epidemic health crisis is not among them. The DOE points, however, to Article XVII, § 1 of the Constitution, which gives the General Assembly the power to act extra-Constitutionally in light of a health emergency, where necessary to preserve the continuity of government. The legislature explicitly relied on this provision in enacting the legislation at issue.

Legislation enjoys a presumption of constitutionality. The Plaintiffs argues strenuously that the in-person polling system, which will remain open for voters who wish to vote in person, is sufficient to ensure the continuity of government. Perhaps. But the legislature has specifically found otherwise, sufficient to invoke the power granted it by Article XVII, § 1. Because its findings rationally relate to the authority invoked, this facial challenge to the constitutionality of the Act must fail. The Plaintiffs also point to what they maintain will be the pernicious effects of a failure to enjoin; any health benefits, they argue, will be outweighed by the deleterious effects of vote-by-mail. Perhaps. But I am not a legislator, let alone a super-legislator charged with perfecting the laws of the State. Having determined that the law in question is permitted under the Delaware Constitution, I must deny injunctive relief, and my role is at an end.

My reasoning follows.

## I.  Background[3]

### A.  *The Parties*

The Plaintiffs are the Republican State Committee of Delaware (the "RSC"), John Foltz, and Paula Manolakos.[4]  The RSC is an unincorporated political association under Title 15 of the Delaware Code with its principal place of business in Delaware.[5]  Mr. Foltz and Ms. Manolakos are residents of Delaware and registered Delaware voters.[6]

The Defendants are the State of Delaware Department of Elections and Anthony J. Albence.[7]  The Department is an agency of the State of Delaware.[8]  Mr. Albence is the State Election Commissioner for the State of Delaware.[9]

### B.  *Relevant Facts*

The Vote by Mail Statute was introduced into the Delaware House of Representatives as House Bill 346 on June 12, 2020 ("HB 346").  HB 346 passed

---

[3] I base the facts for this summary judgment ruling on the evidence submitted under affidavit with the parties' papers as well as the parties' pleadings where undisputed facts are involved. No material facts are in dispute.

[4] *See* Pl.'s Compl. for Injunctive Relief and Declaratory J., Dkt. No. 1., ¶ 5 [hereinafter Compl.].

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 7.

[8] *Id.*

[9] *Id.* at ¶ 8.

the House on June 18, 2020, and passed the Senate on June 25, 2020.[10] In HB 346, the General Assembly stated its factual findings and underlying rationale for passing the legislation. Relying on guidelines promulgated by the federal Centers for Disease Control and Prevention, the General Assembly found that "COVID-19 is a highly contagious virus that spreads from person-to-person most frequently when in close contact,"[11] and "will likely continue to create dangerous and potentially life threatening public health conditions for Delawareans through the Summer, Fall, and early Winter, 2020."[12] The General Assembly further addressed two relevant provisions of the Delaware Constitution of 1897,[13] Article V, § 4A, which lists the requirements for absentee voting (which include disease, presumably that suffered by the voter, but not a general health emergency),[14] and Article XVII, § 1, which authorizes legislative action to "[e]nsure the continuity of State and local governmental operations in periods of emergency." When exercising the emergency powers granted by Article XVII, § 1, "the General Assembly shall in all respects conform to the requirements of this Constitution except to the extent that in the judgment of the General Assembly to do so would be impracticable or would cause

---

[10] *See* Walton Aff., Ex. B., Dkt. No. 20.

[11] HB 346 § 1, ¶ 5.

[12] *Id.* at ¶ 4.

[13] The Constitution of 1897, as amended, is the current constitution of the State of Delaware.

[14] *See* Del. Const. art. V, § 4A; HB 346 § 1, ¶ 11 ("[t]he list of reasons for absentee voting is exhaustive.").

undue delay."[15]  Ultimately, the General Assembly concluded that "due to the highly contagious nature of COVID-19 and the need to protect the electors [that is, the voters] and polling workers . . . voting by mail is necessary and proper for [e]nsuring the continuity of governmental operations, and to conform to the requirements Article V, § 4A would be impracticable."[16]

As signed into law by Governor John Carney on July 1, 2020, the Vote by Mail Statute amends Title 15 of the Delaware Code to allow voters who would not meet the usual requirements for absentee voting to vote by mail.[17]  The statute applies only to the 2020 primary, general, and any special elections, and will expire by its terms January 12, 2021.[18]

*C. Procedural History*

Plaintiffs filed their Complaint on August 19, 2020, seeking (1) a permanent injunction against conducting the November 3, 2020 general election in accordance with the Vote by Mail Statute;[19] and (2) a declaratory judgment that "(a) in enacting HB 346, the General Assembly exceeded [its] constitutional authority, (b) the

---

[15] Del. Const. art. XVII, §1.
[16] Compl. ¶ 14.
[17] *See* Compl. Ex. A.
[18] *See* Del. Code Ann. tit. 15, §§ 5601–5621 (West 2020); *id.* at § 5602 ("[a]ny qualified elector, duly registered, of this State may cast the qualified elector's vote by mail in the 2020 primary election, general election, special election held under the provisions of Chapter 73 of this title).
[19] Compl. ¶ 25

6

General Assembly impermissibly used Del. Const. Art. XVII, § 1 as a work around of the constraints on absentee voting requirements contained in Del. Const. Art. V, § 4A, and (c) the provisions of HB 346 concerning vote by mail are not measures . . . necessary and proper for insuring the continuity of governmental operations contemplated by Del. Const. Art. XVII, § 1."[20] Recognizing the exigency of this matter, I granted the Plaintiffs' Motion to Expedite on September 2, 2020.[21] I heard oral argument on the Plaintiffs' Motion for Summary Judgment on September 24, 2020, [22] together with their request for final injunctive relief, and consider the matter submitted for decision as of that date. The parties have not disputed any material facts on the constitutional questions presented.[23] Consequently, this Opinion renders a final decision on the merits based on the record submitted.

---

[20] Compl. ¶ 23 (internal quotation marks omitted).

[21] *See* Order Granting Mot. for Expedited Proceedings and Scheduling Oral Arg. on Mot. for Summ. J., Dkt. No. 11.

[22] It does not require a record for me to observe that partisan emotions regarding the upcoming election are at a high pitch, and that emotions over the exercise of fundamental rights, of which the right to vote is among the most profound, run hot. In light of this background, I point out that the briefing and argument of counsel on both sides in this litigation has been professional; Counsel exhibited civility with one another and with the Court, while still zealously and effectively advocating the views of their respective clients, consonant with the traditions of the Delaware bar. This is what Delaware judges expect, but given the circumstances of this case, I note it, and appreciate it, nonetheless.

[23] *See* Defs.' Answering Br. In Opp'n to Pls.' Mot. for Summ. J. 14, Dkt. No. 20.

## II.    Relevant Legal Standards

### A. *Legal Standard Applicable on Summary Judgment*

Summary judgment may be granted where there is "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law."[24] The moving party bears the initial burden of demonstrating the "absence of a material factual dispute."[25]  If the moving party makes this initial showing, "the burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[26]  In reviewing a summary judgment motion, the Court "must view the evidence in the light most favorable to the non-moving party."[27]  Thus, the Court must deny a request for summary judgment "if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom."[28] Where, as here, the only issues in contention are interpretations of statutory or

---

[24] Ch. Ct. R. 56(c).

[25] *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 356 (Del. Ch. 2008) (quoting *Levy v. HLI Operating Co.*, 924 A.2d 210, 219 (Del. Ch. 2007)); *see also In re El Paso Pipeline Partners, L.P.*, 2014 WL 2768782, at *8 (Del. Ch. June 12, 2014).

[26] *In re Transkaryotic Therapies, Inc.*, 954 A.2d at 356.

[27] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).

[28] *In re El Paso Pipeline Partners, L.P.*, 2014 WL 2768782, at *8 (quoting *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970)).

constitutional language—both of which are questions of law—summary judgment is appropriate.[29]

The DOE has not made a cross-motion for summary judgment. The Plaintiffs, however, also seek permanent injunctive relief. Because the Plaintiffs' Motion for Summary Judgment resolves the first prong of a permanent injunction inquiry—success on the merits—against the Plaintiffs, the permanent injunction request becomes moot. Consequently, I find that DOE is entitled to a judgment in its favor.[30]

### B. Legal Standard Applicable to Legislative Enactments

"Enactments of the Delaware General Assembly are presumed to be constitutional."[31]   This presumption can be defeated by "clear and convincing evidence of unconstitutionality."[32]   Where, as here, the challenge presented is a

---

[29] *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 627 (10th Cir. 1998) (interpretation of both state and federal constitutional law are "purely legal questions"); *First Health Settlement Class v. Chartis Speciality Ins. Co.*, 111 A.3d 993, 998 (Del. 2015) ("Interpretation of a statute is a question of law[.]"); *see Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *2 (Del. Ch. Nov. 8, 2007) ("Where the dispute centers on the proper interpretation of an unambiguous contract, summary judgment is appropriate *because such interpretation is a question of law*.") (emphasis added).

[30] I informed the parties in a pre-trial conference on September 2, 2020 that I intended to resolve this matter based on the record as it existed at the time the matter was submitted. No party objected. *See* Tr. of 9.2.20 Telephonic Scheduling Conference, Dkt. No. 21; Ch. Ct. R. 56(h) (addressing cross-motions for summary judgment in the absence of material issues of fact as "the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.")

[31] *Hoover v. State*, 958 A.2d 816, 821 (Del. 2008).

[32] *Sierra v. Dep't of Servs. for Children, Youth & their Families*, 2020 WL 4745278, at *8 (Del. Aug. 17, 2020) (citing *Monceaux v. State*, 51 A.3d 474, 477 (Del. 2012)).

facial one, a plaintiff bears the burden of showing that the challenged statute "cannot be valid under any set of circumstances."[33]

## C. Relevant Constitutional Provisions

The ability of the General Assembly to promulgate legislation on behalf of the citizens of Delaware is limited by the strictures of the Delaware Constitution. The Plaintiffs challenge the Vote by Mail Statute under two provisions of the Delaware Constitution: (1) Article V, § 4A and (2) Article XVII, § 1. In addition the Delaware Constitution's Bill of Rights provides that "[a]ll elections shall be free and equal,"[34] and the Constitution also provides that "the General Assembly may by law prescribe the means, methods and instruments of voting so as best to secure the secrecy and the independence of the voter, preserve the freedom and purity of elections, and prevent fraud, corruption and intimidation thereat."[35]

---

In light of the principles stated above, I turn to the issue presented.

## III.   Analysis

---

[33] *Id.* at *9; *see also Port Penn Hunting Lodge Ass'n v. Meyer*, 2019 WL 2077900.
[34] Del. Const. art. I, § 3.
[35] Del. Const. art. V, § 1.

## A. Standing and Laches

The Defendants suggest that neither the institutional Plaintiff nor the individual Plaintiffs have suffered an injury-in-fact, and thus all plaintiffs lack standing to challenge the Vote-by Mail statute. They also raise laches as an affirmative defense. These are not frivolous issues. A party without standing may not invoke the review of a statute by this Court, and equitable relief sought should be denied to plaintiffs who have substantially increased the cost to a defendant by an unjustified delay in bringing the action. The delay here has clearly caused harm, as hundreds of thousands of ballot applications have already been mailed under the Act.[36] Whether the delay was unjustified, however, is intensely a matter of fact that cannot be addressed on this record. Similarly, whether the institutional Plaintiff has suffered a harm distinct from the public would require creation of a record on that issue. Time is of the essence here; if a constitutional violation is ongoing, and the Plaintiffs may ultimately both establish standing and overcome laches, they will face irreparable harm. Additionally, the harm to the public of granting Plaintiffs the relief they seek grows apace as the election nears. Accordingly, in this unusual circumstance, for purposes of this decision only, I assume without deciding that the

---

[36] Albence Aff. 6, Dkt. No. 22.

11

Plaintiffs have standing and their claims are timely brought, and I proceed on the merits.

### B. Constitutionality of the Act

The question I must address here is a straightforward statutory inquiry. The General Assembly, via the Act, has extended eligibility for remote voting beyond those electors entitled to so vote by Article V, § 4A of the Delaware Constitution. The parties agree that the list in Article V, § 4A of those citizens entitled to vote by absentee ballot is meant to be exhaustive. Thus, the General Assembly may only expand remote voting beyond that list by properly invoking the emergency powers of Article XVII, § 1 to "[e]nsure the continuity of State and local governments." In doing so, however, it must conform to the Delaware Constitution's requirements "except to the extent that[,] in the judgment of the General Assembly[,] to do so would be impracticable or would cause undue delay." The Plaintiffs argue that the Vote by Mail Statute is unnecessary to ensure the continuity of State and local governments and adherence to Article V, § 4A is not impracticable.

Based on this perceived constitutional violation, the Plaintiffs seek to permanently enjoin operation of the Act. The irreparable injury alleged is the Constitutional breach itself, plus the risk of disenfranchisement due to an increase in remote voting; the Plaintiffs posit that the Act will lead to a greater percentage of

12

ballots being spoiled, due to the complexity of voting by mail. Preventing this threatened spoilage, per the Plaintiffs, requires that equity act to prevent voters from receiving mail-in ballots, or, alternatively, to prevent mail-in ballots cast pursuant to the Act from being counted, and to require that only[37] votes cast in person on the day of the election be counted. First, however, I must determine whether there is a constitutional violation at all.

### (1) The Vote by Mail Statute does not extend remote voting for a reason listed in Article V, § 4A.

The Plaintiffs' challenge to the Vote by Mail Statute under Article V, § 4A is uncomplicated. That section provides a list of reasons for which a registered voter may submit an absentee ballot to be counted in a general election.[38] The need for social distancing to minimize public health risks is not on that list, nor do the Defendants argue that it is,[39] and the list is meant to be exhaustive.[40] Therefore,

---

[37] Because the Plaintiffs have not provided a form of order, it is unclear how they would handle absentee ballots cast pursuant to the law as it existed before enactment of the Vote-by-Mail statute, and whether those ballots could be segregated in a meaningful way from ballots cast under the Act.

[38] "The General Assembly shall enact general laws providing that any qualified elector of this State, duly registered, who shall be unable to appear to cast his or her ballot at any general election at the regular polling place of the election district in which he or she is registered, either because of being in the public service of the United States or of this State, or his or her spouse or dependents when residing with or accompanying him or her because of the nature of his or her business or occupation, because of his or her sickness or physical disability, because of his or her absence from the district while on vacation, or because of the tenets or teachings of his or her religion, may cast a ballot at such general election to be counted in such election district." Del. Const., art. V, § 4A.

[39] HB 346, § 1 ¶ 11.

[40] *See Opinion of the Justices*, 295 A2d 718, 722 (Del. 1972).

absent some other authority, Article V, § 4A prohibits the General Assembly from allowing general absentee voting for the November 4, 2020 general election based on the threat posed by the COVID-19 virus.

### (2) *Article XVII, § 1 provides a safe harbor for the Act.*

Having shown that the Vote by Mail Statute does not fall within Article V, § 4A's list, the Plaintiffs next contend that the Vote by Mail Statute is not otherwise authorized by Article XVII, § 1, as a measure "as may be necessary and proper" for ensuring the continuity of governmental operations.[41] The Defendants reply that the General Assembly's finding—"due to the highly contagious nature of COVID–19 and the need to protect the electors and polling workers in this State from infection of COVID–19, voting by mail is necessary and proper for [e]nsuring the continuity of governmental operations, and to conform to the requirements of Article V, § 4A, would be impracticable"[42]—does properly invoke Article XVII, § 1's safe harbor.

The Delaware Constitution at Article XVII, § 1 provides the General Assembly with the authority to adopt "measures as may be necessary and proper" to "[e]nsure the continuity of State and local governmental operations" in times of emergency.[43] In exercising this emergency power, the General Assembly "shall in

---

[41] Pls.' Opening Br. In Support of Mot. for Summ. J. 14, Dkt. No. 15 [hereinafter Pls.' Op. Br.].
[42] *Id.* at ¶ 13.
[43] Del. Const. art. XVII, § 1.

14

all respects conform to the requirements of [the] Constitution except to the extent that in the judgment of the General Assembly to do so would be impracticable or would cause undue delay."[44] Given the findings of the legislature summarized above, the Defendants assert, the Vote by Mail Statute is within the General Assembly's enhanced authority under Art. XVII, § 1 to act by what would otherwise be extraconstitutional means. Amending the Delaware Constitution to provide for remote voting in response to an epidemic, before Election Day 2020, would be not only impractical, I note, but impossible.[45]

The Plaintiffs, for their part, do not dispute the General Assembly's judgment that the continuing state of emergency declared by Governor Carney qualifies as an "emergency resulting from . . . disease"[46] sufficient to trigger the General Assembly's power under Article XVII, § 1.[47] Instead, the Plaintiffs contend that the

---

[44] *Id.*

[45] *See* Del. Const., Art. XVI, § 1 ("[a]ny amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two thirds of all the members elected to each House, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon, and the Secretary of State shall cause such proposed amendment or amendments to be published three months before the next general election in at least three newspapers in each county in which such newspapers shall be published; and if in the General Assembly next after the said election such proposed amendment or amendments shall upon yea and nay vote be agreed to by two thirds of all the members elected to each House, the same shall thereupon become part of the Constitution.")

[46] Del. Const. art. XVII, § 1.

[47] Pls.' Op. Br. 14–21. As the Plaintiffs point out, the case law interpreting Article XVII, § 1 does not address emergency voting regulations. *See* Pls.' Op. Br. at 14-15 (citing *Opinion of the Justices*, 295 A2d 718, 722 (Del. 1972)). It is clear from an examination of Article XVII, § 1 as it existed prior to 2018 that the Section was intended primarily as a provision of power to the legislature to ensure that public offices remain occupied in the event of enemy attack, and to

15

Vote by Mail Statute, as written, is not a measure as may be necessary and proper for ensuring the continuity of governmental operations.

Thus, the Plaintiffs' argument rests on the premise that broad mail-in voting is not a "necessary and proper" response to the threat posed to governmental operations by COVID-19. The standard for my review of this legislative finding is quite limited. In light of the Plaintiffs' facial challenge to the validity of the Act, it

---

provide a safe harbor for emergency legislation pertaining to preserving government in such situation. Even given that limited aim, our Supreme Court has read the provisions of the Section broadly. *See generally Opinion of the Justices*, 295 A2d 718 (Del. 1972). In that case, for instance, the Court opined that the provision allowing enactment of "such other matters as may be necessary and proper" to ensure "continuity of government" would be broad enough to encompass moving the seat of government from Dover.

The Plaintiffs point to the three hypothetical situations addressed in *Opinion of the Justices* as illustrative of the contours of those situations affecting the "continuity of government" as addressed in the Section. To the extent that Plaintiffs are arguing that those hypotheticals pose a limit to the exercise of legislative power under Section 1, the argument is misplaced. First, *Opinion of the Justices* is an *advisory* opinion; it is limited to the questions posed to the court by the governor. Further, after its amendment in 2018, the safe harbor of Article XVII, § 1 was expanded to apply to emergencies of all kinds. No party, I note, has suggested that Article XVII, § 1 as recently amended does not apply to a health emergency such as that currently declared by the Governor to be in effect. No party here has argued that the power extended to the General Assembly in Section 1(2) to respond to a period of emergency so as to preserve the continuity of government, does not extend to emergency regulation of voting (although the Plaintiffs argue that it does not extend to legislation protecting citizens "from a public health emergency" generally). Instead, as addressed throughout this Memorandum Opinion, the parties hotly contest whether the *method* by which the legislature has attempted to exercise its emergency power "may be" considered "necessary and proper" for ensuring the continuity of government, and whether adherence to Article V, § 4A's enumeration of reasons to vote absentee is "practicable" given the nature of the emergency. Consistent with the parties' contentions, therefore, I assume that the safe harbor of Article XVII, § 1(2) is sufficiently capacious to accommodate emergency voting regulations.

16

must demonstrate clearly and convincingly that the legislative finding of necessity is false or unwarranted.

On the facts of record, the Plaintiffs do not come close to meeting that standard. The Governor has declared a state of emergency resulting from COVID-19. Nationally, over 200,000 Americans have died from the virus, which continues to spread.[48] The transmission is airborne. The State has taken extraordinary measures to limit direct exposure of citizens to COVID-19, at places of work and recreation. The General Assembly "found and declared" the following in connection with the Act:

> (1) The Centers for Disease Control ("CDC") has determined that a novel coronavirus ("COVID–19") presents a serious public health threat and has advised the public that asymptomatic individuals may be carriers of the COVID–19 virus and may unknowingly spread the virus to other individuals in close proximity, and therefore social distancing is required to help mitigate the individual exposure to and community spread of the COVID–19 virus.

> (2) Governor Carney declared a State of Emergency for the State of Delaware Due to a Public Health Threat as a result of COVID–19 on March 12, 2020.

> (3) A primary responsibility of the General Assembly is to protect the citizens of Delaware from a public health emergency that threatens their lives and the lives of their families.

> (4) The public health threat created by COVID–19 will likely continue to create dangerous and potentially life-threatening public health

---

[48] *COVID-19 Data in Motion: Friday, September 25, 2020*, Johns Hopkins University of Medicine: Coronavirus Resource Center, https://coronavirus.jhu.edu/. I note that, at the time the statute was passed, the number was lower.

conditions for Delawareans through the Summer, Fall and early Winter, 2020.

(5) COVID–19 is a highly contagious virus that spreads from person-to-person most frequently when in close contact. Evidence shows that the virus may remain viable for hours to days on surfaces.

(6) People 60 and older, those with serious chronic health conditions, people with disabilities, face greater risks for COVID–19.

(7) As of May 22, 2020, the total number of cases of COVID–19 in the United States was 1,571,617 resulting in 94,150 deaths. According to the CDC, the total number of cases increased by 20,522 in 1 day.

(8) As of May 23, 2020, the total number of cases of COVID–19 in Delaware was 8,690 resulting in 324 deaths. The total number of cases increased by 161 in 1 day.

(9) The CDC encourages that due to COVID–19, voters use voting methods that minimize direct contact with other people and reduce crowd size at polling stations.

(10) The CDC also encourages that nursing homes, long-term care facilities, and senior living residences not be used as polling places to minimize COVID–19 exposure among individuals and those with chronic medical conditions.

(11) Article V, § 4A of the Delaware Constitution permits absentee voting in limited circumstances including when an elector is in the public service of the United States, the nature of an elector's business or occupation, or an elector's sickness, disability, or absence from the district while on vacation. The list of reasons for absentee voting is exhaustive.

(12) Pursuant to Article XVII, § I, the General Assembly, in order to insure continuity of State and local governmental operations in periods of emergency resulting from disease, shall have the power and the immediate duty to adopt such other measures as may be necessary and proper for insuring the continuity of governmental operations. In the exercise of the powers conferred by Article XVII, § 1, the General Assembly shall in all respects conform to the requirements of this

18

Constitution except to the extent that in the judgment of the General Assembly to do so would be impracticable or would cause undue delay.

(13) It is the judgment of the General Assembly that due to the highly contagious nature of COVID–19 and the need to protect the electors and polling workers in this State from infection of COVID–19, voting by mail is necessary and proper for insuring the continuity of governmental operations, and to conform to the requirements of Article V, § 4A, would be impracticable.[49]

The Plaintiffs argue strenuously that these legislative findings are insufficient to support the legislature's conclusion at paragraph 13, that it is "necessary" to employ vote by mail to ensure the continuity of government. The Plaintiffs' note that, with or without the Act, the polls will be open, and that those brave or heedless enough can stand in line, indoors and out, and vote in person.[50] In their view, any health risk resulting is offset by the risk that a mail-in ballot will be unintentionally spoiled. It is true, I suppose, that the few or many who were unable to vote absentee under previous law, and were willing to undertake a health risk to exercise their franchise in person, could serve as the electorate by which officials could be chosen and government "continued." But it is also clear that continuity of a democratically-elected government requires meaningful participation from the citizenry.[51] The Delaware Constitution at Article I, § 3 requires that elected officials be chosen by

---

[49] HB 346.
[50] Pls.' Op. Br. 16.
[51] Allowing those voters not eligible for absentee ballots to vote by mail could further insure the continuity of government by reducing the likelihood of constitutional challenges to the legitimacy of an election where many votes go uncounted due to risk of disease.

19

"free and equal" elections. It is also true that the risk of the virus spreading among the people, following universal in-person voting, is itself inimical to the continuity of government. The maintenance of polling places with their volunteer staff, itself a governmental function, is threatened by massive in-person voting. The foregoing was the rationale of the legislature, and, in light of that determination, it is not clearly unreasonable or manifestly incorrect that the Act is necessary to the continuity of governmental operations. The legislature also determined that any procedures to address this risk in conformity with Article V, § 1 would be impracticable, a matter the Constitution explicitly commends to the legislative discretion.[52] Having found that, I may not by ukase substitute my judgment, or the Plaintiffs', for that of the legislature. Where, as here, a facial challenge has been made, legislation should only be disturbed in the face of clear and convincing evidence of its invalidity.[53] The General Assembly determined that allowing votes to be cast by mail is necessary and proper to ensure the continuity of governmental operations during the current

---

[52] Del. Const. art. XVII, § 1.

[53] *See Sierra v. Dep't of Servs. for Children, Youth & their Families*, 2020 WL 4745278, at *8–9 (Del. Aug. 17, 2020) (citing *Monceaux v. State*, 51 A.3d 474, 477 (Del. 2012); *Port Penn Hunting Lodge Ass'n v. Meyer*, 2019 WL 2077600, at *6 (Del. Ch. May 9, 2019), *aff'd*, 222 A.3d 1044 (Del. 2019); *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 286-287 (Del. 2016) (considering settled principles of statutory interpretation and recognizing the judiciary's duty to give effect to the General Assembly's enactments); *Hoover v. State*, 958 A.2d 816, 821 (Del. 2008); *Helman v. State*, 784 A.2d 1058, 1068 (Del. 2001) (acknowledging "the presumption of constitutionality that acts of the General Assembly necessarily enjoy"); *Justice v. Gatchell*, 325 A.2d 97, 102 (Del. 1974).

state of emergency and that conformity with Article V, § 4A would be impracticable. Plaintiffs have failed to demonstrate that the General Assembly's determinations are clearly insufficient.[54]

## IV.    Conclusion

In short, the Plaintiffs disagree with the policy decision of the legislature.  They have attempted to convince me to disagree as well.  But even if they were successful, such an attempt would be inapt.  The legislature, in the face of an epidemic of airborne disease and in light of the health emergency declared by the Governor, has made a determination that vote-by-mail is necessary for the continued operation of governmental functions, and that it would be impracticable to address this problem other than by otherwise-extraconstitutional means.  These finding are not clearly erroneous.  Therefore, the Plaintiffs' Motion for Summary Judgment must be denied.

Since I have determined that the Plaintiffs cannot succeed on the merits, their request for permanent injunctive relief must also be denied.  The Defendants are

---

[54] To the extent that the Plaintiffs argue that the Act cannot be "necessary" because Section 4A already permits absentee voting, those provisions are not duplicative.  Section 4A, as the Plaintiffs' themselves assert, does not permit voting by mail other than in a narrow set of circumstances. The Voting by Mail Statute permits every registered voter to vote by mail if they so choose. Not every voter meets the absentee voter requirements of Section 4A. Therefore, the Vote by Mail Statute is not duplicative of existing law, and the legislature's finding of necessity is not made clearly erroneous on that ground.

entitled to a judgment in their favor.  The parties should submit an appropriate form of order.