**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No.: N22C-08-488 EMD CCLD |
| FEDEX CORP., FEDEX GROUND PACKAGE SYSTEM, INC., GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, and LIBERTY MUTUAL INSURANCE EUROPE LIMITED, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: May 26, 2023[1]
Decided: July 18, 2023

*Upon the Defendants' Motion to Dismiss or, in the alternative, Stay First Amended Complaint and Cross-Claim of Liberty Mutual Insurance Europe Limited*
***GRANTED***

Robert Cahall, Esquire, McCormick & Priore, P.C., Newark, Delaware, Daniel McNeel Lane, Jr., Esquire, Kelly A. Potter, Esquire, Norton Rose Fulbright US LLP, San Antonio, Texas, Mina Matin, Esquire, Lisa Schapira, Esquire, Norton Rose Fulbright US LLP, New York, New York. *Attorneys for Plaintiff National Union Fire Insurance Company of Pittsburgh, PA.*

Steven L. Caponi, Esquire, Matthew B. Goeller, Esquire, Megan E. O'Connor, Esquire, K&L Gates LLP, Wilmington, Delaware, Carolyn M. Branthoover, Esquire, Jessica L.G. Moran, Esquire, K&L Gates LLP, Pittsburgh, Pennsylvania. *Attorneys for Defendants FedEx Corp. and FedEx Ground Package System, Inc.*

Richard M. Beck, Esquire, Sally E. Veghte, Esquire, Klehr Harrison Harvey Branzburg LLP, Wilmington, Delaware, James P. Ruggeri, Esquire, Edward B. Parks, II, Esquire, Sean T. Kelly, Esquire, Ruggeri Parks Weinberg LLP, Washington, D.C. *Attorneys for Defendant Great American Insurance Company of New York.*

---

[1] D.I. No. 59.

Marc S. Casarino, Esquire, Kennedys CMK LLP, Wilmington, Delaware. *Attorney for Defendant and Counterclaim Plaintiff Liberty Mutual Insurance Europe SE.*

**DAVIS, J.**

## I.      INTRODUCTION

This action is an insurance coverage dispute contract claim assigned to the Complex Commercial Litigation Division of the Court. Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") commenced this action against Defendants FedEx Corp. ("FedEx Corp."); FedEx Ground Package System, Inc. ("FedEx Ground") (together, "FedEx"), Great American Insurance Company of New York ("GAIC"), and Liberty Mutual Insurance Europe Limited ("LM").

FedEx filed a Motion to Dismiss, or in the Alterative, Stay First Amended Complaint and Cross-Claim of LM (the "Motion"), asserting that, under the doctrines of comity and *forum non conveniens*, the Court should dismiss or stay the present action (the "Delaware Action") due to the currently pending and more comprehensive Pennsylvania suit (the "Pennsylvania Action"). FedEx maintains that the Pennsylvania action is based on the same legal issues and facts raised in this action. FedEx contends that for purposes of comity, this action is not entitled to any deference as the first-filed action (despite the Pennsylvania Action being filed after National Union initiated this suit) because National Union filed this action in anticipation that FedEx would file a breach of contract claim against National Union in another jurisdiction.

FedEx also alleges that the LM and GAIC's cross-claims against FedEx should be stayed under the *McWane* factors, as the cross-claims are second-filed to the Pennsylvania Action, in which FedEx brought LM and GAIC as defendants in a breach of contract suit.

For the reasons stated below, the Motion is **GRANTED**. The Court will issue the stay solely on comity grounds. The Court provides an alternative *forum non conveniens* analysis that

2

demonstrates the case could proceed here; however, the Pennsylvania Court (as defined below) has manifested a desire to address the disputes of the parties on an efficient basis. As such, comity warrants a stay of this action pending further developments in the Pennsylvania Action (as defined below).

## II. RELEVANT FACTS

### A. THE PARTIES

National Union is a Pennsylvania corporation with its principal place of business in New York, New York.[2]

FedEx Corp. is a Delaware corporation with its principal place of business in Memphis, Tennessee.[3]

FedEx Ground is a Delaware corporation with its principal place of business in Moon Township, Pennsylvania. FedEx Ground is a wholly owned subsidiary of FedEx Corp.[4]

GAIC is a New York corporation with its principal place of business in Cincinnati, Ohio.[5]

LM is a foreign corporation with its principal place of business in Leudelange, Grand Duchy of Luxembourg.[6]

### B. THE INSURANCE POLICIES

FedEx Ground maintains a liability insurance program which is renewed annually. During the relevant period between October 1, 2011, and October 1, 2012, FedEx Ground was covered under six (6) excess liability insurance policies.[7]

---

[2] First Amended Complaint for Declaratory Judgment ("Amend. Compl.") ¶ 20.
[3] *Id.* ¶ 21.
[4] *Id.* ¶ 22.
[5] *Id.* ¶ 23.
[6] Liberty Mutual's Answer ("LM Answer") ¶ 24.
[7] Defendants' Motion to Dismiss (the "Mot.") at 5.

National Union's commercial umbrella liability policy (the "NU Policy") served as the first-layer of the six excess liability insurance policies for FedEx Ground.[8] The NU Policy provided for an excess coverage of up to $50 million for each occurrence of liability.[9] Under the NU Policy, FedEx Ground maintained responsibility for a self-insured Retained Limit amount of $10 million for assuming its own defense in lawsuits for personal and bodily injury claims.[10] The NU Policy declared that National Union was not obligated to defend or pay for defense costs for actions against FedEx Ground until FedEx Ground exhausted the Retained Limit amount due to "Loss," i.e., "sums actually paid as judgments or settlements."[11] Upon exhaustion of the $10 million Retained Limit for "Loss," under Section III.A titled "Defense Provisions," the NU Policy obligated National Union to defend FedEx Ground in any suit seeking damages for personal and bodily injury, and make indemnification payments to FedEx Ground for any post-judgment interest arising out of the suits.[12]

GAIC's policy provided the third layer of excess liability coverage to FedEx between the relevant period of October 1, 2010, and October 1, 2011 (the "GAIC Policy").[13] The GAIC Policy provided "coverage up to a per Occurrence and Aggregate Limit of $50,000,000 excess of $100,000,000 in 'Underlying Limits of Insurance.'"[14] As such, GAIC would pay up to $50,000,000 to FedEx after the underlying first- and second-layer insurers have already paid out $100,000,000 in total. The GAIC Policy followed the terms, definitions, conditions, and exclusions of the NU Policy except for certain modifications.[15] As discussed below, GAIC paid

---

[8] Amend. Compl. ¶ 30; Mot. at 5.
[9] Amend. Compl. ¶¶ 32-33; National Union Commercial Umbrella Liability Policy for FedEx ("NU Policy") Declarations Item 3A, Section 1(A)-(B), Section IV(A).
[10] Amend. Compl. ¶ 35.
[11] *Id.* ¶ 35; NU Policy at 20.
[12] Amend. Compl. ¶ 37; NU Policy § III.A (as amended by Endorsement Number 26).
[13] Amend. Compl. ¶ 47.
[14] *Id.*
[15] *Id.* ¶ 49. The differing terms and clauses from the NU Policy are not relevant for purposes of this suit.

an indemnity amount of $47,168,750 to FedEx/FedEx Ground in relation to the original *Morga* Judgment.[16]

LM's policy provided the fifth layer of excess liability coverage to FedEx between the relevant period of October 1, 2010, and October 1, 2011 (the "LM Policy").[17] The LM Policy provided "coverage up to a per Occurrence and Aggregate Limit of $50,000,000 excess of $250,000,000, which is in turn 'excess of various insurances and/or retentions as more fully set forth in the Lead Underlying Policy.'"[18] Like the GAIC Policy, the LM Policy followed the terms, definitions, conditions, and exclusions of the NU Policy except for certain modifications.[19] The LM Policy did not apply until the Underlying Insurers "have paid or have been held liable to pay the full amount of their respective Limit(s) of Liability . . . ."[20]

The three other remaining (second, fourth, and sixth layer) excess liability policies of the six total included arbitration clauses, and as such, those insurers are not parties to this suit.

## C. THE *MORGA* ACTION

On or around June 22, 2011, a FedEx owned tractor trailer was involved in an accident with a pickup truck, resulting in the deaths of a 21-year-old woman and her 4-year-old daughter, and injuries to the woman's nineteen-month-old son.[21] Alfredo Morga and other plaintiffs filed suit in New Mexico against FedEx Corp, FedEx Ground, and other defendants in response to the accident (the "*Morga* Action").[22] On or around January 23, 2015, a jury awarded the *Morga* Action plaintiffs $165,533,000 in damages, with FedEx Ground and its agents liable for

---

[16] *Id.* ¶ 52.
[17] *Id.* ¶ 53.
[18] *Id.*
[19] *Id.* ¶ 55. The differing terms and clauses from the NU Policy are not relevant for purposes of this suit.
[20] *Id.*
[21] *Id.* ¶ 59.
[22] *Id.*

$157,256,350 of that total (the "*Morga* Judgment").[23] After the trial, the *Morga* Action

defendants sought a remitter of the damages, arguing that the jury verdict was excessive.[24] The

*Morga* Action plaintiffs then sought pre-judgement interest, which was awarded at an annual rate

of 5%, amounting to $20,908,670.38 upon the final judgment date of April 3, 2015.[25]

Under New Mexico Law, post-judgment interest accrues at a rate of 15% from the date of

entry of a judgment based on tortious conduct, bad faith or intentional or willful acts.[26] As such,

the *Morga* Judgment began accruing a 15% post-judgment interest rate on April 3, 2015.[27]

On August 24, 2015, FedEx Ground filed a notice of appeal with the New Mexico Court

of Appeals.[28] The appeals court affirmed the *Morga* Judgment on February 6, 2018.[29] In March

2018, FedEx Ground initiated an appeal to the NM Supreme Court (the "*Morga* Appeal").[30] On

May 19, 2022, the NM Supreme Court affirmed the *Morga* Judgment, and published its opinion

on July 12, 2022.[31] National Union, LM, and GAIC were not involved in the *Morga* Action

appeal process because FedEx Ground hired its own counsel for both appeals.[32] As of June

2022, the post-judgment interest on the *Morga* Judgment accrued to an amount of $188

Million.[33] FedEx also incurred nearly $21,000,000 in pre-judgment interest.[34] FedEx paid the

pre- and post-judgment interest amounts to the underlying plaintiffs.[35]

---

[23] *Id.* ¶ 60.
[24] *Id.* ¶ 61.
[25] *Id.*
[26] *Id.* ¶ 7.
[27] *Id.*
[28] *Id.* ¶ 62.
[29] *Id.*
[30] *Id.* ¶ 63.
[31] *Id.*
[32] *Id.* ¶¶ 64-68.
[33] *Id.* ¶ 7. It is likely that the current amount of post-judgment interest owed in the *Morga* judgment is higher, as the pleadings do not show that a stay was placed on the accrual of the post-judgment interest for purposes of the present litigation, or the PA suit.
[34] *Id.*
[35] *Id.*

On June 14, 2022, FedEx contacted National Union to request $50 Million in indemnity payments in satisfaction of the original *Morga* Judgment amount.[36]  Then, on June 15, 2022, FedEx's counsel requested that the payment be made via wire transfer.[37]  National Union received the wire transfer instructions on June 22, 2022.  National Union then made the indemnify payment of $50 million to the *Morga* Action plaintiffs on June 23, 2022.[38]  GAIC paid $47,168,750 in indemnify payments directly to FedEx in connection with the *Morga* Judgment.[39]  LM has not indemnified FedEx for any judgment amounts related to the *Morga* Judgment.[40]

### D.  CURRENT LITIGATION

National Union filed its Complaint against FedEx Ground and FedEx Corp with this Court on August 30, 2022.[41]  FedEx filed a Motion to Dismiss or Stay on September 28, 2022.[42]  National Union then filed an Amended Complaint on October 7, 2022, joining GAIC and LM as co-defendants, alleging that National Union is not obligated to indemnify FedEx Ground for any pre- and post-judgment interest amounts related to the *Morga* Judgment.[43]

National Union contends that under the NU Policy, National Union was obligated to defend FedEx Ground for the lawsuits only after FedEx Ground exhausted its $10 million Retained Limit for payment of "Loss," which did not occur until June 2022, *after* the conclusion of both the *Morga* Action and the *Morga* Appeal.  National Union states that because it did not opt to, nor had a duty to, undertake the subsequent appeals of the original *Morga* Judgment under the NU Policy, all pre- and post-judgment interest amounts are not indemnifiable to FedEx.

---

[36] *Id.* ¶ 85.
[37] *Id.* ¶ 86.
[38] *Id.* ¶¶ 88-89.
[39] *Id.* ¶ 52.
[40] *Id.* ¶ 58.
[41] D.I. No. 1. FedEx Ground filed its Pennsylvania Action on September 6, 2022, against National Union, LM, and GAIC.
[42] D.I. No. 16.
[43] Amend. Compl. (D.I. No. 19).

On September 6, 2022, FedEx initiated the Pennsylvania Action in the Court of Common Pleas of Alleghany County, Pennsylvania (the "Pennsylvania Court").[44] FedEx contends that the Pennsylvania Action is "significantly more comprehensive" than this case.[45] FedEx bases this contention on the fact that it asserts more causes of action than would be asserted here in Delaware.[46] All the claims, however, arise out of the same operative insurance policies.[47]

On October 21, 2022, LM filed an answer to National Union's Amended Complaint, asserting affirmative defenses, a counterclaim against National Union, and cross-claims against FedEx and GAIC.[48] LM's counterclaim seeks to obtain a declaration of National Union's rights and obligations to FedEx under the NU Policy with respect to coverage for the pre- and post-judgment interest accrued on the *Morga* Judgment.[49] Additionally, LM's cross-claim seeks to obtain a declaration of its rights and obligations under Liberty's policy with respect to coverage for the pre- and post-judgment interest accrued on the *Morga* Judgment.[50]

On November 7, 2022, FedEx filed a Motion to Dismiss or, in the Alternative, Stay First Amended Complaint and Cross-Claim of Liberty Mutual Insurance Europe Limited.[51] FedEx argued that this action should be dismissed or stayed on grounds of comity or *forum non conveniens*, due to the pending and more comprehensive Pennsylvania Action filed by FedEx Ground on September 6, 2022.[52] FedEx alleged that the Delaware action was filed by National Union in anticipation of FedEx Ground's impending suit against National Union for its failure to pay for the pre- and post-judgment interest amounts. FedEx also argues that LM's cross- and

---

[44] D.I. No. 30 at 9 ("Mot.").
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] D.I. No. 22 ("LM Answer").
[49] *Id.* at 97.
[50] *Id.*
[51] D.I. No. 30.
[52] *Id.* at 2.

8

counterclaims was a perpetuation of National Union's "procedural gamesmanship" and should be stayed under *McWane* for failing to relate back to the original complaint.[53]

On November 7, 2022, GAIC filed an Answer to the First Amended Complaint seeking a declaratory judgment.[54] GAIC maintains that it was not obligated to indemnify FedEx for the pre- or post-judgment interest arising of the *Morga* Judgment.[55] GAIC stated that under the GAIC excess insurance policy, pre- and post-judgment interest amounts are "expressly considered as Defense Expenses, payable by the insured(s) until it/they satisfy the Retained Limit."[56] GAIC also alleges that because the Retained Limit ($10 Million) was not exhausted until sometime in June 2022, after the *Morga* Appeal concluded, the triggering event which would have obligated GAIC to indemnify FedEx for the pre- and post-judgment interest amounts never occurred.[57]

On November 15, 2022, FedEx filed a Motion to Stay Declaratory Judgment Cross-Claim of Defendant Great American Insurance Company of New York.[58] FedEx argued that GAIC's cross-claims against FedEx should be stayed following the *McWane* doctrine and the "first-filed rule," because GAIC's cross-claims against FedEx were filed two months after FedEx commenced the PA Action against GAIC.[59] FedEx contends that GAIC's cross-claims against FedEx do not "relate back" to the original Complaint by National Union because GAIC was not a party to the original Complaint, and GAIC's cross-claims are also independent from National Union's claims.[60]

---

[53] *Id.* at 3.
[54] D.I. No. 31 ("GAIC Answer").
[55] *Id.*
[56] GAIC Answer ¶ 183.
[57] *Id.* ¶¶ 183-184.
[58] D.I. No. 34 (the "Mot. to Stay GAIC").
[59] *Id.* at 12-13.
[60] *Id.* at 17.

9

On December 7, 2022, GAIC filed its Opposition to FedEx's Motion to Stay Declaratory Judgment Cross-Claims of GAIC.[61] On that same date, LM filed its Opposition to FedEx's Motion to Dismiss or Stay the Amended Complaint and LM's cross-claims.[62]

On December 7, 2022, National Union filed its Opposition to FedEx's Motion to Dismiss or Stay.[63] National Union disagrees with FedEx's arguments that this action should be dismissed or stayed due to the alleged, more "comprehensive" nature of the PA action. National Union argues that having more claims does not make an action more "comprehensive."[64] Additionally, National Union reaffirms that, based on *forum non conveniens* factors, Delaware remains the proper forum for the dispute and the PA action does not receive the benefit of the "first filed rule" under Delaware caselaw, nor should it be treated as "contemporaneously filed" by the Court.[65]

On December 22, 2022, FedEx filed its Reply Brief in support of its motion to dismiss or stay National Union's Amended Complaint.[66] On the same day, FedEx also filed its Reply Brief in support of its motions to stay GAIC and LM's cross-claims.[67]

## III.    PARTIES' CONTENTIONS

### A. THE MOTION

FedEx seeks to dismiss or stay the Delaware Action based on grounds of comity or *forum non conveniens*. FedEx argues that while the first-filed rule provides deference to the plaintiff's choice of forum, "[n]o such deference is due . . . when the two actions involve different parties such that the court in which the first-filed action was brought is unable to provide complete

---

[61] D.I. No. 41.
[62] D.I. No. 42.
[63] D.I. No. 43 ("Opp.").
[64] *Id*. at 23.
[65] *See id.*
[66] D.I. No. 44.
[67] D.I. No. 45.

10

relief."[68]  FedEx cites to *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, where this Court found that two factors should be considered when determining whether to give deference to the plaintiff's choice of forum: (i) whether the first-filed action was "filed in anticipation of litigation" for the purpose of securing a favorable forum, and (ii) if the defendant in the first-filed action is the natural plaintiff.[69]

FedEx argues that the Delaware Action was filed by National Union in anticipation of FedEx Ground initiating coverage litigation elsewhere in a "race to the courthouse" situation. FedEx points to National Union's lack of corporate ties to Delaware as having neither its incorporation nor its principal place of business in Delaware, and Delaware's lack of connection to the underlying NU Policy, or the *Morga* Action.  FedEx also contends that FedEx Ground is the natural plaintiff in this dispute as the insured party seeking indemnification from its insurer for a claim under an existing liability insurance policy.

FedEx claims that the balance of the *Cryo-Maid* factors supports the finding that Pennsylvania is the proper forum for the present dispute.  FedEx argues that even if the Court finds that there are insufficient grounds to find "overwhelming hardship" necessary for an outright dismissal, a stay is still appropriate under the totality of the *Cryo-Maid* factors.

**B.  THE OPPOSITION**

National Union argues that the Motion should be denied because FedEx failed to sufficiently show "overwhelming hardship" under the *Cryo-Maid* balancing test for dismissal or a stay of a first-filed suit for *forum non conveniens*.

---

[68] Mot. at 13.
[69] *Id*. at 15 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, 2014 WL 703808, at *4 (Del. Super. Feb. 17, 2014)).

First, National Union rejects FedEx's contentions that the Pennsylvania action should be considered as "contemporaneously filed," or that the Delaware Action should not be considered as the "first-filed" action, because there was "no race to the courthouse." National Union notes that communications with FedEx's counsel made prior to the PA Action show that FedEx was "caught off guard" and "surprised" by National Union's filing of the present suit, evincing the lack of a "race to the courthouse." National Union also argues that FedEx was aware prior to NM Supreme Court's affirmation of the *Morga* Judgment that National Union would not indemnify FedEx for any pre- or post-judgment interest amounts under the existing NU Policy. National Union states that the Pennsylvania Action was filed over a week after the Delaware Action was filed, further evincing that the Pennsylvania Action was a reactionary filing, and that there was no race to the courthouse.

Additionally, National Union contends that the consideration of the "natural plaintiff" is only implicated when there is a real race to the courthouse, which did not happen here. National Union argues that an insurer filing a declaratory judgment against the insured party does not automatically create a presumption that the first-filed action was an anticipatory filing and cites to Delaware caselaw where Delaware courts have denied motions to dismiss or stay in favor of the insurer's first-filed declaratory judgment actions.[70]

Furthermore, National Union states that contrary to FedEx's arguments, the Pennsylvania Action is not "significantly more comprehensive" than the Delaware Action, as both disputes arise out of the same factual and legal issues, and simply having more claims does not make a suit more comprehensive. National Union contends that in fact, the Pennsylvania Action is less

___

[70] Opp. at 17 (citing *In re CVS*, 2022 WL 3330427, at *4 (Del. Super. Aug. 12, 2022); *Certain Underwriters at Lloyds*, 2008 WL 660485, at *5 (Del. Super. Mar. 7, 2008); *Lincoln Benefit Life Co. v. Wilmington Tr., N.A.*, 2018 WL 1638871, at *2 (Del. Super. Apr. 5, 2018)).

comprehensive than the Delaware Action because the Pennsylvania Action does not include FedEx Corp., who is a necessary party to the current dispute but cannot be hailed in Pennsylvania due to the state's lack of personal jurisdiction over FedEx Corp.

Lastly, National Union maintains that a stay of the Delaware Action would have the same effect as a dismissal because "FedEx Corp. is not subject to personal jurisdiction in Pennsylvania, such that a stay as to the Delaware Action will have the same practical effect as a dismissal as to FedEx Corp."[71] National Union cites to *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Axiall Corporation*, where the Court noted that "where a stay will likely have substantially the same effect as a dismissal, the defendant must show that one or more of the factors, either separately or together, would subject the defendant to sufficient hardship to warrant staying the proceedings."[72]

LM and GAIC also oppose the Motion.

## IV.    STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[73] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[74]

---

[71] Opp. at 19.

[72] *Id.* at 18 (citing *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Axiall Corporation*, 2019 WL 4303388, at *4 (Del. Super. Sept. 11, 2019)).

[73] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[74] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).

13

## V. DISCUSSION

### A. COMITY WARRANTS STAYING THE DELAWARE ACTION.

This Court must decide whether to defer to the Pennsylvania Court and stay the Delaware Action. The Court may follow the doctrine of comity, which applies when two courts have "concurrent jurisdiction over the same matter."[75] The doctrine is not a legal rule but "an expression of one state's entirely voluntary decision to defer to the policy of another, especially in the face of a strong assertion of interest by the other jurisdiction."[76] A court may use its discretion to stay a matter if the same matter is pending in a different court because a court "should not assume to disturb another court's disposition of a controversy unless there are good reasons for doing so."[77]

The Delaware Supreme Court applied the doctrine of comity in two related cases, *First Health Settlement Class v. Chartis Specialty Insurance Company* and *Corvel Corporation v. Homeland Insurance Company of New York*.[78] *First Health* depended on whether the Delaware Supreme Court should defer to an interpretation of a Louisiana statute by the Louisiana Court of Appeals from collateral litigation.[79] In a 3-2 decision with a dissent, the Supreme Court adopted the Louisiana court's interpretation, instead of using Delaware law.[80] Both the majority and the dissent addressed the doctrine of comity. The Supreme Court acknowledged that "[c]omity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference."[81] The dissent agreed that comity is important and that courts should try

---

[75] 16 AM. JUR. 2D *Conflict of Laws* § 11 (2015).
[76] *Id.* (internal footnotes omitted).
[77] *Id.*
[78] *Corvel Corp. v. Homeland Ins. Co. of N.Y.*, 112 A.3d 863 (Del. 2015); *First Health Settlement Class v. Chartis Specialty Ins. Co.*, 111 A.3d 993 (Del. 2015).
[79] *First Health*, 111 A.3d at 998-1001.
[80] *Id.* at 999-1000.
[81] *Id.* at 998.

to avoid conflicting rulings.[82]  The dissent disagreed with the majority because the Louisiana court should have shown comity to Delaware courts[83] and because following what the Louisiana court decided would be "demonstrably unfair" to the parties.[84]  The *Corvel* decision is nearly identical to the *First Health* decision.[85]

This Court is going to apply the doctrine of comity here and stay this action in deference to the Pennsylvania Action.  The Pennsylvania Court has already decided that the Pennsylvania Action should proceed.  The Pennsylvania Court did this even though it was known that the Delaware Action existed and that it was filed prior to the Pennsylvania Action.  The Pennsylvania Court ruled that the Pennsylvania Action should proceed over the objections of National Union, LM and GAIC.  While the Pennsylvania Court has not specifically articulated its reasons, this Court infers that the Pennsylvania Court did so because: (i) there are factual ties to Pennsylvania, and (ii) one of the insureds, FedEx Ground, has its principal place of business in Pennsylvania.   In this case, staying the Delaware Action out of deference to the Pennsylvania Court would avoid confusion and inconsistent rulings.  As stated by the Delaware Supreme Court, the doctrine of comity is important and courts should try to avoid issuing conflicting rulings on the same issue.[86]  Moreover, a stay would conserve judicial resources and avoid duplicative litigation costs for the parties.[87]

---

[82] *Id.* at 1000.
[83] "Had the Louisiana trial court itself showed comity by staying its hand after the Delaware Superior Court made the first ruling in the coverage issue and letting this case run its course to finality, the conflict the Majority Opinion is trying to avoid would not have arisen in the first instance."  *Id.* at 1007.
[84] *Id.*
[85] *Corvel*, 112 A.3d 863 (Del. 2015).
[86] *First Health*, 111 F.3d at 1001.
[87] The Court reviewed the record in this civil action and noted that the parties are engaged in discovery.  The Court encourages using that discovery in the Pennsylvania Action in order to mitigate litigation expenses.

The Court is staying this action solely on the grounds of comity. The Court has engaged in the additional analysis requested by the parties in the event some issue arises in the Pennsylvania Action that would warrant lifting the stay here.

### B. THE "OVERWHELMING HARDSHIP" STANDARD APPLIES.

Under Delaware law, a motion to stay or dismiss on grounds of *forum non conveniens* is addressed to the sound discretion of the Court. When applying the *forum non conveniens* analysis, courts "always must consider judicial economy and principles of comity."[88] "In balancing all of the relevant factors, the focus of the analysis should be which forum would be the more 'easy, expeditious, and inexpensive' in which to litigate."[89] Delaware courts apply different standards depending on the circumstances when determining whether a suit should be stayed or dismissed for *forum non conveniens*.

If the Court deems the Delaware Action as first-filed, dismissal under *forum non conveniens* is only available when the defendants show "overwhelming hardship" from litigating the Delaware action.[90] Delaware courts have held that the overwhelming hardship standard also applies where granting a stay of a contemporaneously filed action would likely have the same ultimate effect as a dismissal.[91] The standard "is not intended to be preclusive[,]" but it "is intended as a stringent standard that holds defendants who seek to deprive a plaintiff of [its] chosen forum to an appropriately high burden."[92] Defendants may satisfy the standard if they can convince the Court that the action is "one of those rare cases where the drastic relief of

---

[88] *Turner*, 2014 WL 703808, at *2.
[89] *Id.*
[90] *In re CVS Opioid Insurance Litig.*, 2022 WL at *4.
[91] *Turner*, 2014 WL 703808, at *2.
[92] *Martinez v. E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1105 (Del. 2014).

16

dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship . . . .”[93]

When a movant seeks a stay under *forum non conveniens* grounds and multiple actions are considered contemporaneously filed, this Court examines the motion to stay “under the traditional *forum non conveniens* framework without preference for one action over the other to avoid rewarding the victor of the “race to the courthouse.”[94]  In other words, “the movant need only demonstrate that the preponderance of applicable forum factors ‘tips in favor’ of litigating the dispute in the non-Delaware forum.”[95]

Delaware courts determine whether to dismiss or stay an action based on *forum non conveniens* by evaluating the six *Cryo–Maid* factors. The Court will consider: (1) whether Delaware law governs the case; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the pendency of any similar action in another jurisdiction; (5) the possibility of a need to view the premises; and (6) all other practical considerations that would make the trial easy, expeditious, and inexpensive.[96]

A plaintiff’s choice of forum generally is entitled to great deference.[97]  However, the forum choice is not immune from scrutiny.[98]  The Court takes into account the circumstances surrounding the filing of the actions to determine if the first-filed action should be given great deference.[99]  Where the actions were filed within the same general time frame, the Court considers the actions simultaneously filed so as to avoid a “race to the courthouse.”[100]  Delaware

---

[93] *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 835 (Del. 1999).
[94] *In re CVS*, 2022 WL 3330427, at *4.
[95] *Turner*, 2014 WL 703808, at *2.
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.*

17

courts find that when a first-filed declaratory judgment is deemed to have been filed in an anticipatory nature, it is not entitled to the deference generally provided to first filed actions. Delaware courts also look at whether the defendant in the first filed action is the "natural plaintiff" when considering the facts of the case.[101]

National Union argues that the Pennsylvania Action was a reactionary filing by FedEx in response to the Delaware Action, and that there was no "race to the courthouse." National Union alleges that before FedEx initiated the *Morga* Appeal, FedEx was made aware of National Union's position that it would not cover any pre- or post-judgment interest amounts arising from the *Morga* Judgment.[102] National Union contends that the Delaware Action is not one of the rare instances where some precipitating event spurred the parties to seek relief at roughly the same time. National Union argues that FedEx had years of notice that National Union would not cover the pre- and post-judgment interest amounts from the *Morga* Judgment, and that FedEx had ample notice and time to file their suit against National Union, but notably, only chose to do so after National Union filed the Delaware Action.

FedEx contends that the Delaware Action was a "pre-emptive, insurer-commenced declaratory judgment action" which was filed in a race to the courthouse and with the anticipation that FedEx would file its breach of contract claim against National Union elsewhere.[103] FedEx also claims that Delaware caselaw provides a presumption that an insured

---

[101] *Id.*
[102] Opp. at 6. In support, National Union states that prior to the entry of the Morga Judgment on April 3, 2015, National Union informed FedEx on March 6, 2015, that it would not cover any post-judgment interest claims under the NU Policy, and FedEx never disputed this position. On June 13, 2022, FedEx's insurance broker requested coverage from FedEx's excess insurers for the post-judgment interest on the Morga Judgment and advised the insurers to "reconsider their position" regarding the lack of coverage for the accrued interest amounts but did not indicate that it would initiate litigation over the conflict. On September 15, 2022, in a call between counsel for FedEx and counsel for National Union, FedEx's counsel allegedly indicated that FedEx was "caught off guard" and "surprised" by National Union's filing of this suit on August 31, 2022. Opp. at 6-7, 17.
[103] Mot. at 16.

18

party seeking coverage from its insurer is the "natural plaintiff," and here, as FedEx is seeking coverage from its insurer, FedEx is the "natural plaintiff."

The facts show that the Delaware Action filed by National Union should receive some deference as first filed, because there was no "race to the courthouse." The facts in this case closely mirrors those of *In re CVS*, where this Court did not find evidence of a "race to the courthouse" when both the insured and the insurer parties in a coverage dispute had been free to file an action at any time prior to the insurer filing a first-filed declaratory judgment action in Delaware, and the facts showed that CVS, as the insured party, stated that the insurer "surprised CVS with this action" by filing "without warning or provocation."[104]

FedEx was aware as early as April 3, 2015, that National Union would not be covering any pre- or post-judgment interest amounts arising from the *Morga* Judgment and *Morga* Appeal. This is supported by FedEx's June 13, 2022 communications to its excess insurers a month after the New Mexico Supreme Court's affirmation of the *Morga* Judgment. FedEx advised the excess insurers to "reconsider their position" that post-judgment interest would not be covered under the existing excess liability policies. Like *In re CVS*, the coverage dispute was already ripe before National Union filed the Delaware Action.

FedEx was made aware in April 2015 that if they sought to appeal the *Morga* Judgment, without National Union becoming involved in the appeal process either voluntarily or by contractual obligation, the NU Policy would not indemnify FedEx for any pre- or post-judgment interest arising from the *Morga* Judgment. If FedEx believed that National Union and the excess liability insurers were obligated to indemnify FedEx for the interest amounts, FedEx

---

[104] *In re CVS*, 2022 WL 3330427, at *5.

19

should/could have filed the Pennsylvania Action against the insurer prior to August 30, 2022, when National Union filed this action.

The call between the parties' counsel on September 15, 2022, when FedEx's counsel indicated to National Union that FedEx was "caught off guard" and "surprised" by National Union filing the present action further supports the notion that there was no "race to the courthouse." In *In re CVS*, this Court found that when the defendant CVS stated that the plaintiff "surprised CVS with this action" by filing the declaratory judgment suit "without warning or provocation," it evinced that there was no race to the courthouse.[105] The same holds true here.

FedEx argues that "[w]hen an insurer has failed to provide coverage, the insured is the 'natural plaintiff' to sue for payment."[106] While Delaware caselaw does provide that "the insured[] is in the role of the natural plaintiff following a denial of coverage,"[107] as the *In re CVS* Court noted, when there was no evidence of a race to the courthouse, the "status as the 'natural plaintiff' carries little independent significance."[108]

The Court finds that the Delaware Action should receive some deference as the first-filed action because FedEx does not sufficiently show that there was a real "race to the courthouse" or that the Delaware Action was anticipatorily filed by National Union. The Court does note that the Amended Complaint was filed after FedEx sought to stay this action and after FedEx filed the Pennsylvania Action. Much of this dilutes the fact that this case was filed about a week before the Pennsylvania Action.

---

[105] *Id.*

[106] Mot. at 16.

[107] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crosstex Energy Servs., L.P.*, 2013 WL 6598736, at *5 (Del. Super. Dec. 13, 2013).

[108] *In re CVS*, 2022 WL 3330427, at *11.

## C. NO PARTY CAN MEET THE OVERWHELMING HARDSHIP STANDARD.

When the Delaware case is the first-filed action, a party seeking relief via *forum non conveniens* must show that they will face "overwhelming hardship" from litigating the Delaware action unless it is not dismissed.[109] While FedEx also seeks a stay as an alternative relief, a stay is likely to have similar effects here as a dismissal because it would force National Union to effectively lose its choice of forum as the plaintiff, and litigate the same legal issues in the second-filed forum. As such, the "overwhelming hardship" standard will also apply to FedEx's alternative motion to stay the Delaware Action.[110]

The Court will consider the following *Cryo-Maid* factors for the *forum non conveniens* analysis: (1) whether Delaware law governs the case; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the pendency of any similar action in another jurisdiction; (5) the possibility of a need to view the premises; and (6) all other practical considerations that would make the trial easy, expeditious, and inexpensive.

The subsequent analysis of the *Cryo-Maid* factors show that no party could overcome the burden of demonstrating that the balance of the *Cryo-Maid* factors weighs "so overwhelmingly in [its] favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to [it]."[111]

### 1. *Whether Delaware law governs the case*.

This factor does not support the finding that the present action should be dismissed or stayed or show "overwhelming hardship" against FedEx. This first factor assesses "whether the

---

[109] *Id.* at *7.
[110] *BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. Jan. 12, 2010).
[111] *Martinez*, 86 A.2d at 1106.

21

controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction."[112]

FedEx states that the NU Policy has no governing law provision, and the Motion does not require the Court to make the choice of law determination at this time.[113] FedEx also argues that while FedEx Ground and FedEx Corp. are both incorporated in Delaware, there are no other connections between Delaware and the parties or the underlying facts of the case.[114] FedEx contends that "Delaware has no particular interest in applying its insurance coverage law to a dispute between a Pennsylvania-headquartered policyholder and its Pennsylvania-incorporated insurer regarding a liability arising out of a suit tried in New Mexico."[115] FedEx concludes that whether Delaware law applies is "an inapplicable or neutral factor."[116]

This case is in its initial stages and no party takes a strong position on what law will apply to the dispute. National Union argues that that FedEx failed to meet its burden to show that there was an actual conflict of law between Delaware and any another jurisdiction. National Union also contends that FedEx's briefing is absent of any arguments that Pennsylvania law would be more applicable or relevant to the issues. FedEx argues that beside FedEx Ground and FedEx Corp.'s incorporation in Delaware, the case has no further connections to Delaware. Moreover, FedEx offers no support that Pennsylvania or another state's laws would be more applicable to the case.

The Court would be surprised if Delaware law would apply to this case. On choice of law, the Court follows the holding in *Certain Underwriters of Lloyds, London v. Chemtura*

---

[112] *Id.* at 1104.
[113] Mot. at 19.
[114] *Id.*
[115] *Id.* at 20.
[116] *Id.* at 21.

*Corp.*[117] when determining which law applies to a comprehensive insurance program. The Supreme Court emphasized that, when applying the *Second Restatement* factors to a corporate-wide insurance program, the inquiry should center on the insurance contracts and not the underlying claims. Otherwise, the insurance policies could be subject to different interpretations depending on the state law where each claim arose. While the factual record is undeveloped, the Court doubts that Delaware was the (a) place of contracting; (b) the place of negotiating; (c) the place of performance; and (d) the location of the subject matter of the contract. It is true that certain parties are incorporated in Delaware but that, most likely, would not warrant the application of Delaware law.

### 2. *The relative ease of access to proof.*

This factor does not support the finding that the present action should be dismissed or stayed and fails to show "overwhelming hardship" against any party. When analyzing the relative ease of access to proof, Delaware courts look at the "proximity of the proposed forum to the necessary proof."[118]

FedEx argues that much of the proof "relevant to the parties' course of dealing with respect to the *Morga* Action and NU Pittsburgh's related coverage obligations to FedEx Ground is located in Pennsylvania, where FedEx Ground is headquartered and where most of FedEx Ground's employees who interacted with its insurers are presently located."[119] FedEx also notes that most of the documentary proof is in the claims management system that FedEx Ground maintains in Pennsylvania.

---

[117] 160 A.3d 457 (Del. 2017).
[118] *In re Asbestos Litig.*, 929 A.2d 373, 383 (Del. Super. 2006).
[119] Mot. at 21.

National Union argues that the relative access to proof is the same in Delaware as in Pennsylvania because the relevant evidence consisting of electronically stored information and documentation. National Union notes that Delaware courts have already recognized that "modern methods of information transfer render concerns about transmission of documents *virtually irrelevant*."[120]

Here, the relative ease of access to proof is neutral. As FedEx themselves conclude, much of the relevant proof is documentary in nature, and stored on claims management systems maintained by FedEx Ground in their Pennsylvania offices. The physical location of where the electronic files are located and stored offers no ascertainable hardship to FedEx in this litigation, as the information can be transmitted near instantaneously with modern technology. The information itself is not native to Delaware nor Pennsylvania, as the underlying *Morga* suit and appeals all occurred in NM. FedEx's conclusory statement regarding the location of "FedEx Ground's employees who interacted with its insurers" seems to imply that such employees may be potential witnesses, but as addressed in the following section, it is a non-issue for purposes of access to relevant proof for this action.

### 3. *The availability of compulsory process for witnesses.*

This factor does not support the finding that the present action should be dismissed or stayed and fails to show "overwhelming hardship" against any party. When analyzing this factor, Delaware courts must evaluate whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process."[121]

FedEx argues that this factor weighs in favor of the PA Action because "many of the potential witnesses reside in Pennsylvania, where FedEx Ground is located and where [National

---

[120] Opp. at 20 (emphasis in original).
[121] *Azurix Corp. v. Synagro Techs., Inc.*, 2000 WL 193117, at *6 (Del. Ch. Feb. 3, 2000).

24

Union] is corporately located and conducts extensive business."[122] FedEx argues that litigating in Delaware would limit the number of compulsory witnesses, and that the Delaware Action provides no advantage in compelling witnesses to testify at trial.

National Union argues that the "potential witnesses" residing in Pennsylvania are all FedEx Ground employees who can be made available by FedEx for testimony purposes as required. National Union also points out that under Delaware caselaw, if a defendant fails to "name the witnesses it deem[s] necessary to call . . . or explain why their testimony could not be presented in Delaware by deposition . . . [i]t follows that the defendant fail[s] to sustain its burden of proof."[123]

Here, the availability of compulsory process for witnesses is a neutral factor. While it may be true that most of the relevant witnesses to this action are FedEx Ground employees residing in Pennsylvania, FedEx fails to identify any specific witnesses who would only be available to testify in the Pennsylvania Action. FedEx also offers no arguments or explanations as to why their own employees could not be made to either testify in Delaware or made available for depositions. As the *In re CVS* Court noted, when the potential witnesses are employees of the parties, such witnesses "generally do not require compulsory process to obtain their appearance."[124] As such, the availability of compulsory process for witnesses does not favor either Pennsylvania or Delaware, and is insufficient to show "overwhelming hardship" on FedEx. The Court does recognize, however, that it would be limited on who it could "compel" to testify live at trial.

---

[122] Mot. at 22.
[123] Opp. at 21 (citing *States Marine Lines v. Domingo*, 269 A.2d 223, 226 (Del. 1970)).
[124] *In re CVS*, 2022 WL 3330427, at *8 (citing *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460, at *6 (Del. Ch. June 26, 2009)).

25

### 4.  *The pendency of any similar action in another jurisdiction.*

FedEx argues that this factor is the "most significant," and weighs heavily in favor of the Pennsylvania Action.  FedEx contends that the Pennsylvania Action is the more comprehensive action.  FedEx notes that the Pennsylvania Action not only includes all of the claims at issue in the Delaware Action, but also contains additional claims against National Union, GAIC, and LM.[125]  FedEx also alleges that if the Delaware Action is not dismissed or stayed, it will suffer overwhelming hardship by being forced to litigate in both forums and face the possibility of inconsistent judgments.[126] Additionally, FedEx contends that GAIC and LM are improperly joined defendants in the present action.[127]

Both the Delaware Action and the Pennsylvania Action rely on the same factual issues and questions.  Both suits present the same core question as to whether the excess liability insurers need to indemnify FedEx for the *Morga* pre- and post-judgment interest.  FedEx fails to address how the Pennsylvania Action is more capable of answering the question than Delaware.  FedEx seems to rely on an argument that the Pennsylvania Action is somehow more comprehensive because it contains more claims than the Delaware Action.  However, the Court does not believe that a greater number of claims necessarily makes one case more comprehensive than the other.  As National Union notes in their Opposition, the additional claims FedEx asserts

---

[125] Mot. at 25. In the Pennsylvania Action, FedEx Ground asserted four causes of action against National Union (two counts for breach of contract, one count of promissory estoppel, and one count of bad faith), two causes of action against GAIC (one count for breach of contract related to pre-judgment interest, and one count for breach of contract related to post-judgment interest) and one cause of action against LM (one count for declaratory judgment).

[126] Mot. at 26.

[127] This branch of argument by FedEx related to the alleged impropriety of National Union joining GAIC and LM as co-defendants to FedEx is not relevant to the discussion of *forum non conveniens* and will not be addressed here. For contextual purposes only, FedEx asserts throughout its briefings that National Union joined LM and GAIC as defendants in an alleged ploy to "defeat FedEx Ground's legitimate choice of forum in Pennsylvania" and for procedural "gamesmanship." National Union brought in LM and GAIC as necessary parties to the suit because LM and GAIC were the other excess liability insurers whose indemnification liability would be implicated depending on whether the Court finds that National Union is or is not liable to indemnify FedEx. LM and GAIC assert cross-claims against FedEx which closely mirror National Union's declaratory judgment claims against FedEx.

in the Pennsylvania Action could have been asserted as counterclaims in the Delaware Action, instead of being filed in a separate suit in a different forum based on the same factual issues.

FedEx also contends that it would suffer overwhelming hardship if forced to litigate in two forums based on a common set of factual issues and risk inconsistent judgments. As the Court in *In re CVS* noted, when a party files a second action, then proceeds to complain that it will face overwhelming hardship by having to litigate the same issue in two separate forums, the alleged hardship is a self-inflicted problem to which the Courts give little weight in a *forum non conveniens* analysis.[128]

Additionally, FedEx cites to *Lincoln Benefit Life Co. v. Wilmington Trust, N.A.*, to show that Delaware courts have previously stayed Delaware declaratory judgment actions when: (i) the foreign case was found to be more comprehensive, and (ii) promoting judicial economy and avoiding the risk of inconsistent verdicts.[129] *Lincoln* must be discounted some as the decision was based, in part, on the finding that the Delaware action would not receive deference as the first-filed action. As such, the mere pendency of any similar action in another jurisdiction is insufficient to show "overwhelming hardship" on FedEx.

One very important fact is that the court in Pennsylvania Action has determined that it has jurisdiction and will proceed with the litigation. National Union, GAIC and LM filed preliminary objections in the Pennsylvania Action. On January 8, 2023, the Pennsylvania Court overruled these preliminary objections.[130] National Union, GAIC and LM filed a joint motion for reconsideration on March 3, 2023.[131] The Pennsylvania Court subsequently heard argument

[128] *In re CVS*, 2022 WL 3330427, at *11.
[129] Mot. at 27 (citing *Lincoln Benefit Life Co. v. Wilmington Trust, N.A.*, 2019 WL 1307870, at *5 (Del. Super. Mar. 21, 2019)).
[130] D.I. No. 47.
[131] D.I. No. 56.

on the motion for reconsideration and then denied the motion.[132]  Unless this Court grants a stay, therefore, the parties will be proceeding in both the Pennsylvania Action and here.

**5.      *The possibility of a need to view the premises.***

Both parties agree that this factor is irrelevant and does not require an analysis.

**6.      *All other practical considerations that would make the trial easy, expeditious, and inexpensive.***

FedEx argues that as other practical considerations, the Court should consider inefficiency, judicial economy, and risk of inconsistent rulings.  FedEx contends that "significant inefficiencies" would occur if the Delaware Action is permitted to continue concurrently with the Pennsylvania Action, resulting in duplicative discovery, motions, and expenses for the parties.  FedEx also claims that simultaneous litigation between the parties would risk inconsistent rulings from the Delaware and Pennsylvania courts.  Additionally, FedEx contends that Delaware has no interest in providing a forum to the action because the only connection to Delaware is the corporate residence of the defendants, FedEx Corp., and FedEx Ground.

The Court understands that if the Delaware Action is not dismissed or stayed, litigating two concurrent actions in Delaware and Pennsylvania will increase costs to the parties and double the use of judicial resources to adjudicate over duplicative issues.  However, this fault lies with the parties' unexplained need to shop forums.  No party can demonstrate that Pennsylvania has a *greater* interest in adjudicating this matter, or that Delaware has *no* interest in keeping the Delaware Action.  The Supreme Court has already rejected arguments that a Delaware action should be stayed "simply to avoid the undesirable result of having two mirror-image actions proceeding in two different jurisdictions."[133]

---

[132] D.I. No. 59.

[133] *Certain Underwriters at Lloyds v. Tyson Foods, Inc.*, 2008 WL 660485, at *5 (Del. Super. Mar. 7, 2008).

Additionally, the fact that the only natural connection of the parties to Delaware is FedEx Corp.[134] and FedEx Ground[135] are incorporated in Delaware is not a convincing factor for purposes of a *forum non conveniens* analysis. As the *Tyson Foods* Court noted,

> Delaware has a significant interest in making a neutral forum available to parties in commercial disputes who file against Delaware entities, even where . . . the parties and conduct are centered in another jurisdiction. The forum *non conveniens* analysis is not altered where the only connection to Delaware is the defendant's status as a Delaware entity.[136]

The Court recognizes that concurrent litigation in both Pennsylvania and Delaware would increase litigation costs and duplicate the use of judicial resources for the same issues. While valid concerns, the Court notes that these concerns do not rise to the level of showing an "overwhelming hardship" upon any party if the Delaware Action is not dismissed or stayed under *forum non conveniens*.

## VI. CONCLUSION

For the reasons stated above, the Court will **GRANT** the Motion as to a stay for purposes of comity. The Court will not, however, dismiss the Delaware Action in the event issues arise in the Pennsylvania Action that would warrant action here.

**IT IS SO ORDERED**

Dated: July 18, 2023
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress

---

[134] FedEx Corp. is a Delaware corporation with its principal place of business in Memphis, TN. Amend. Compl. at ¶ 21.
[135] FedEx Ground is a Delaware corporation with its principal place of business in Moon Township, PA. Amend. Compl. ¶ 22.
[136] *Id.*

29